The State of Ohio, Appellee, *v.* Dutton Drugs, Inc., Appellant.
The State of Ohio, Appellee, *v.* Dutton, Appellant.

[Cite as State v. Dutton Drugs, Inc., 3 Ohio App. 2d 118.]

(Nos. 209 and 210—Decided July 29, 1965.)

*Mr. William Jenkins,* for appellee.
*Messrs. Crow, Crow & Porter,* for appellants.

GRAY, J. Two criminal cases, charging Dutton Drugs, Inc., and Dale McClure Dutton, individually, with misdemeanors, are before this court on appeal from the Court of Common Pleas of Meigs County.

One information was filed against Dale McClure Dutton, in case No. 5560, wherein he was charged with unlawfully selling Seconal 1½ capsules when he was not a registered pharmacist or registered assistant pharmacist licensed by the Ohio State Board of Pharmacy, in violation of Section 4729.28, Revised Code.

Another information, filed in case No. 5559, charged Dutton Drugs, Inc., by its president and officer, Dale McClure Dutton, with operating a retail drugstore without having in the employ of the corporation a pharmacist licensed under the laws of Ohio in full and actual charge of such retail drug store, in violation of Section 4729.27, Revised Code.

The defendants herein will be referred to in the singular as defendant.

On April 3, 1963, Jack R. Lawry, a Narcotic Drug Inspector for the state of Ohio, made a purchase of Seconal from defendant, Dale McClure Dutton. As a result, the two informations were filed. The matters were consolidated, a trial was had and a conviction of defendant on both informations resulted.

Defendant appealed and assigned the following errors:

(1) That the verdict in case No. 5560 is not sustained by sufficient evidence, and is contrary to law.

(2) That the verdict in case No. 5559 is not sustained by sufficient evidence and is contrary to law.

(3) That the trial court refused to admit evidence of the defendant that is prejudicial to the defendant.

(4) That the prosecuting attorney committed misconduct in his argument to the jury, which is prejudicial to the defendant.

(5) That the verdicts in cases Nos. 5559 and 5560 in the Common Pleas Court, Meigs County, Ohio, are contrary to law by virtue of the erroneous charges given by the trial court.

(6) That the verdict in case No. 5560 is contrary to law since the state of Ohio did not prove all necessary elements of the crime.

(7) That trial court admitted evidence of the state of Ohio over objection of the defendant, which is prejudicial to the defendant.

Defendant claims that he was entrapped by agent Lawry and for this reason his conviction should be set aside.

Basically, the issue presented is refined to the question whether defendant had the idea of committing the offense originally, or whether the offense originated in the mind of agent Lawry. Was defendant an unwary law violator or was he an unwary innocent? Stated in another way, was defendant induced by the investigation to violate the law, or was he merely presented with an opportunity to do so? From reading the record we have no hesitancy in determining the action of defendant to be in the latter category.

It is not difficult for us to conclude that he had been in the habit of making such sales to other persons. He appeared to be willing to make the sale of Seconal in this instance. Section 2945.59, Revised Code, permits the prosecution, under certain circumstances, to present evidence of other like acts to show defendant's motive or intent, the absence of mistake or accident on his part, or defendant's scheme, plan or system in doing an act. The prosecution availed itself of the provisions of this law. Defendant, on cross-examination, admitted that he had pleaded guilty in 1961 to charges similar to the ones with which he is presently accused. Such an admission negates entrapment in the instant cases. He was ready and willing to commit the offense as shown by his ready complaisance.

As stated in *Matysek* v. *United States* (1963), 321 F. 2d 246, at page 248:

"The defense of entrapment is not established as a matter of law by simply showing 'that the particular act was com-

mitted at the instance of government officials.' * * * Relevant to the issue is the predisposition and willingness of the accused to commit the crime and the criminal design of the accused." (*Sorrells* v. *United States*, 287 U. S. 451, is cited.)

The rule has been stated that there is no entrapment where criminal intent originates in the mind of the accused and authorities merely afford opportunities or facilities for commission of the offense.

*Johnson* v. *United States* (D. C.), 317 F. 2d 127; *United States* v. *Orza* (C. C. A. 2), 320 F. 2d 574; *Marin* v. *United States* (C. C. A. 9), 324 F. 2d 66; *State* v. *Miclau*, 104 Ohio App. 347, 351; *State* v. *Gutilla*, 94 Ohio App. 469; *State* v. *Miller*, 85 Ohio App. 376; *State* v. *Schubert*, 80 Ohio App. 132, 133; *State* v. *Good*, 110 Ohio App. 415.

This assignment of error is not well taken.

Defendant is charged with selling a drug without being licensed to do so by the state of Ohio. Nowhere in the information filed against him in case No. 5560, or in the evidence presented at the trial of the cause, or in the court's charge to the jury, is the drug referred to as anything but Seconal. "Seconal" happens to be the trade name for a barbiturate manufactured by Eli Lilly and Company. Other pharmaceutical houses have like products under other brand names. Seconal is a trade name and not a generic term.

It has been suggested by the prosecution that judicial notice be taken of the contents of the official United States Pharmacopoeia or the official National Formulary to provide the meaning for the term Seconal.

This same point was raised in the case of *State* v. *Winterich*, 157 Ohio St., 414, 421, 423. The court said (Stewart, J.) :

"Assuming that the court may take judicial notice of what is listed in the pharmacopoeia and formulary, under the definition of 'drug' in Section 1296-1, General Code, it is not sufficient that the article be recognized in the pharmacopoeia or formulary, but to make the article a 'drug' it must, in addition, be intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease, and to constitute any other article a 'drug' it must be intended for use in the diagnosis, cure, mitigation, treatment or prevention of disease in man or other animals or must be an article (other than food) intended to

affect the structure or any function of the body of man or bodies of other animals. Therefore, the charge that an article is a drug, simply because it is listed in the pharmacopoeia or formulary, without qualifying it by its intended use, is an incorrect statement under the law of Ohio and the court committed prejudicial error in so charging.''

''* * * It is still the law of Ohio that a defendant in a criminal action cannot be convicted on general principles or mere suspicion, and in order to convict it is essential that all material elements of the offense charged must be proved beyond a reasonable doubt. That has not been done in the present case * * *.''

The trial court had the mandatory duty to instruct the jury as to the law of the case. It was required to define the crime, which it did not do. It was crucial that the jury understand the meaning of the words defining the crime.

The failure of the prosecution to present evidence describing the intended use of Seconal and the failure of the court to instruct the jury as to the law to be applied to such evidence, is to assume that jurors are educated in the law and medicine—an assumption which no one should attempt to justify.

We believe that *Winterich* is dispositive of this assignment of error which is well taken.

Defendant's assignment of error No. 5 presents a most serious complaint of error on the part of the trial court.

The trial court in its charge to the jury said:

''I believe the court can instruct you and will instruct you that the reference in these statutes to registered pharmacists or registered assistant pharmacists is to those persons registered as pharmacists or assistant pharmacists licensed under the state of Ohio. *This burden would be upon defendant to establish that he did have such a license.*'' (Emphasis added.)

It is absolutely essential that the prosecution prove beyond a reasonable doubt each and every element of the crime that is averred in the information. The trial court, by the above charge, relieved the prosecution of the necessity of proving that defendant was not a licensed pharmacist by the laws of Ohio, and erroneously so.

Both informations alleged that defendant was not licensed as a pharmacist by the state of Ohio. The prosecution was very

careful to prove that defendant did not have such a license, and some of this evidence was admitted over the objection of defendant. Hence the trial court had to be aware of this matter.

We are of the opinion that the trial court committed prejudicial error in putting this burden on defendant. Incidentally it should be noted that when the burden of proof was placed on the defendant no degree of proof in relation thereto was stated or defined.

This same question arose early in Ohio jurisprudence. The first reported case is *Hirn* v. *State* (1852), 1 Ohio St. 15; the next was *Cheadle* v. *State* (1855), 4 Ohio St. 477; then following were *Howard* v. *State* (1860), 11 Ohio St. 328; *Moody* v. *State* (1866), 17 Ohio St. 110; *United States* v. *Cook* (1872), 84 U. S. 168; *Billigheimer* v. *State* (1877), 32 Ohio St. 435; *Seville* v. *State* (1892), 49 Ohio St. 117; *Jones* v. *State* (1896), 54 Ohio St. 1; *State* v. *Hutchinson* (1897), 55 Ohio St. 573; *Hale* v. *State* (1898), 58 Ohio St. 676; *Brinkman* v. *Drolesbaugh* (1918), 97 Ohio St. 171. From 1852 until the present date the Supreme Court has not deviated from this position on this question.

In *Hirn, supra,* the Supreme Court said in the syllabus:

"A negative averment to the matter of an exception or proviso in a statute is not requisite in an indictment, unless the matter of such exception or proviso enter into and become a part of the description of the offense, or a qualification of the language defining or creating it; but as the exception of the sale of liquor for medicinal or pharmaceutical purposes in the proviso in the first section of the law of 1851, to restrain the sale of liquor, points directly to the character of the offense, and becomes a material qualification in the statutory description of it, an indictment under this section is defective without the negative averment."

In *Cheadle, supra,* defendant was prosecuted for selling liquor which was not inspected. The trial court charged the jury that, upon the state proving a sale, the defendant was then required to prove that the liquor was inspected. The Supreme Court held this to be error, Ranney, J., saying:

"The plaintiff in error was prosecuted, under section one of the act of May 1, 1954, 'to prevent the adulteration of alcoholic liquors' * * * for selling a quantity of spirituous liquors which had not been inspected. The information contained the

necessary negative averment, and the only question presented is, whether the state was bound to offer any proof in its support. * * *

"It is perfectly well settled, that the indictment or information must, in all cases, contain the negative averment; and there is no doubt, as a general rule, that some proof must be given to sustain it, where the ground of action rests upon such negative allegation; or where the statute, in describing the offense, contains such negative matter; and where the negative allegation involves a charge of criminal neglect of duty, whether official or otherwise. * * *

"* * *

"In this case the negative matter is inseparably connected with the statutory description of the offense; the prosecution is grounded upon it, and the negative allegation charges a criminal neglect of duty. * * *"

In *Moody, supra,* the Supreme Court held that in order for the state of Ohio to convict one for procuring an abortion the state must prove that such abortion was not necessary to preserve the life of the mother. The court said:

"The negative matter in the statute enters into the description of the offense, and was, therefore, necessarily averred in the indictment."

"* * * The absence of this necessity is, then, so far descriptive of the crime, that the offense can not be established without proof that such necessity did not exist. It is the producing an abortion in the absence of such necessity, that, upon the theory of the statute, constitutes the offense. * * *"

The court held:

"On an indictment under the act of 1834, for procuring an abortion, in order to convict, it is incumbent on the state to prove that it was not necessary to preserve the life of the mother."

A leading case on this point is *Hale, supra,* in which the court, at page 687, succinctly states:

"The test appears to be that, when an exception or proviso in a criminal statute is a part of the description of the offense, it must be negatived in the indictment in order to fully state the offense; but where its effect is merely to take certain persons or acts out of the operation of the general prohibitory

words of the statute, the negative averment is unnecessary. * * *,,

We believe the trial court fell into error by failing to correctly apply this test. The burden of proving the negative averment of defendant not having a license issued by the state of Ohio rests upon the prosecution.

In a later case, the Supreme Court in *State* v. *Miclau*, 167 Ohio St. 38, said in the first paragraph of the syllabus:

"On a criminal charge, it is incumbent upon the state to establish by evidence beyond a reasonable doubt each essential element of the crime as charged and as specified in the statute."

Not being a pharmacist registered by the state of Ohio is the gist of the act denounced by the law, otherwise there would be no crime, *i. e.*, if defendant had a license issued by the state of Ohio, no crime would have been committed by his sale of Seconal. In other words, the only reason for requiring the state to allege and prove this negative averment at all is that, without it, the description of the offense would not be complete—indeed, without it no offense would be alleged at all. Since the fact is that defendant did not have an Ohio license, the state must then prove this fact beyond a reasonable doubt. This is not a burden the defendant should bear. If he were required to bear it, this would amount to a double burden on the defendant; the state would be relieved of its burden to prove this essential negative element beyond a reasonable doubt, and this burden would then be cast on the defendant who should never be required to bear it. Such requirement has never been the law of Ohio and is not such now.

We would have no difficulty whatever in affirming the conviction of defendant in both cases if prejudicial error had not intervened. Assignment of error No. 5 is well taken and requires the reversal of defendant's conviction in both cases, even though we are loath to do so.

As Mr. Justice Clark said in *Mapp* v. *Ohio* (1961), 367 U. S. 643, at 659:

"* * * Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence. * * *."

Even those guilty of the most heinous offenses are entitled to a fair trial. Under the circumstances above related we be-

126

lieve defendant did not receive a fair trial. Whatever the degree of guilt may be of those charged with a crime, they are entitled to be tried by the standards which the Legislature and the Supreme Court have prescribed. We hold that these standards have not been met in this case.

*Judgment reversed.*

BROWN, P. J., and CARLISLE, J., concur.