The STATE of Ohio, Appellee,

v.

SNYDER, Appellant.

[Cite as *State v. Snyder,* 155 Ohio App.3d 453, 2003-Ohio-6399.]

Court of Appeals of Ohio,
Third District, Allen County.

No. 1–03–41.

Decided Dec. 1, 2003.

454

456

Jana E. Gutman, Allen County Assistant Prosecuting Attorney, for appellee.

William F. Kluge, for appellant.

THOMAS F. BRYANT, Presiding Judge.

{¶ 1} Defendant-appellant, Geoffrey D. Snyder ("Snyder"), appeals from the judgment of conviction and sentence of five years to community control of the Court of Common Pleas of Allen County for the charge of importuning, pursuant to R.C. 2907.07(E)(2).

{¶ 2} On September 10, 2002, Investigator Jeff Kinkle of the Lima Police Department logged on to the Internet and entered a chat room, using Yahoo Instant Messenger, under the screen name "Sarah 420 Hottie." Investigator Kinkle had created a fictitious profile for the screen name that designated "Sarah 420 Hottie" as a 14–year–old girl from Lima, Ohio. The screen name had been assumed as part of a Lima Police Department sting operation on importuning. Later that same day, a subject, using the screen name "Man That Heals," logged on and entered the same chat room. "Man That Heals" initiated a conversation, via Instant Messenger, with "Sarah 420 Hottie." "Man That Heals" was subsequently identified by police as Snyder, a 36–year–old coroner from Monroe County, Ohio. During the initial Internet conversation, Snyder told "Sarah 420 Hottie" that he was 27 years old and that he liked young girls.

{¶ 3} On September 12, 2002, Snyder logged on to the Internet again and communicated with "Sarah 420 Hottie." During this conversation, Snyder described to "Sarah" various sexual activity that Snyder wished to engage in with her. A potential meeting for Snyder and "Sarah" was also discussed. On September 14, 2002, Snyder again communicated via the Internet with "Sarah 420 Hottie." The conversation included more discussion of sexual activity, including how Snyder was dying to perform oral sex on "Sarah" and that he also wanted to engage in sexual intercourse with her, among other sexual acts. The two also discussed possible times and places to meet.

{¶ 4} Snyder then initiated conversations with "Sarah 420 Hottie" on September 15, 17, 18, 19, and 23, 2002. Finally, on September 25, 2002, a meeting was ultimately arranged between Snyder and "Sarah" to take place on the following day at a restaurant in Lima, Ohio. On September 26, 2002, Snyder arrived at the predetermined location, a Kewpee Restaurant on Bellefontaine Street in Lima,

Ohio, and approached a police informant who was posing as "Sarah." Snyder was then arrested by police for the offense of importuning. Upon being interviewed by police, Snyder admitted that he had communicated online with "Sarah 420 Hottie."

{¶ 5} Snyder was indicted on November 15, 2002, for importuning, in violation of R.C. 2907.07(E)(2). On November 19, 2002, Snyder entered a written plea of not guilty. Snyder withdrew this plea and entered a plea of no contest to the charge on May 6, 2003. A sentencing hearing was held on July 1, 2003, and Snyder was sentenced to five years of community control. It is from this judgment that Snyder now appeals, asserting the following two assignments of error:

"The trial court committed an error of law by denying the motion to dismiss and to find [sic] R.C. Section 2907.07(E)(2) unconstitutional.

"The trial court committed an error of law by denying the motion to dismiss and to find [sic] R.C. Section 2907.07(E)(2) as applied by Section 2950.01(D)(iv) [sic] unconstitutional."

{¶ 6} In his first assignment of error, Snyder asserts that R.C. 2907.07(E)(2) should be found unconstitutional, and he sets forth several arguments to support this assertion, including that the statute is void for vagueness, invalid for overbreadth, invalid on First Amendment grounds, violative of the Commerce Clause, and permits the entrapment of innocent citizens by law enforcement officers, thereby violating substantive due process rights.

{¶ 7} R.C. 2907.07(E)(2) provides:

"(E) No person shall solicit another by means of a telecommunications device, as defined in section 2913.01 of the Revised Code, to engage in sexual activity with the offender when the offender is eighteen years of age or older and either of the following applies:

"* * *

"(2) The other person is a law enforcement officer posing as a person who is thirteen years of age or older but less than sixteen years of age, the offender believes that the other person is thirteen years of age or older but less than sixteen years of age or is reckless in that regard, and the offender is four or more years older than the age the law enforcement officer assumes in posing as the person who is thirteen years of age or older but less than sixteen years of age."

{¶ 8} There is a strong presumption that all legislative enactments are constitutional. *State v. Collier* (1991), 62 Ohio St.3d 267, 581 N.E.2d 552. "The party alleging that a statute is unconstitutional must prove this assertion beyond a reasonable doubt in order to prevail." *State v. Anderson* (1991), 57 Ohio St.3d

168, 171, 566 N.E.2d 1224; see, also, *Hilton v. Toledo* (1980), 62 Ohio St.2d 394, 396, 16 O.O.3d 430, 405 N.E.2d 1047.

{¶ 9} Snyder's first argument is that R.C. 2907.07(E)(2) is void for vagueness. In his brief, Snyder lays out a jumbled argument in which he asserts that there was no solicitation on his part during the instant messaging conversations held between himself and Officer Kinkle. Snyder then goes on to argue that the statute does not limit law enforcement tactics and is overbroad. Lacking in Snyder's argument is any explanation as to why R.C. 2907.07(E)(2) is void for vagueness.

{¶ 10} The proper standard for determining whether a statute is vague is found in *Connally v. Gen. Constr. Co.* (1926), 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322, and *Grayned v. Rockford* (1972), 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222. In *Connally,* the Supreme Court stated that a vague statute is one "which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally,* 269 U.S. at 391, 46 S.Ct. 126, 70 L.Ed. 322. In *Grayned,* the Supreme Court distinguished the vagueness and overbreadth doctrines, pointing out that "[i]t is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined," whereas "[a] clear and precise enactment may nevertheless be 'overbroad' if in its reach it prohibits constitutionally protected conduct." *Grayned,* 408 U.S. at 108, 114, 92 S.Ct. 2294, 33 L.Ed.2d 222.

{¶ 11} Snyder has the burden of showing that the statute is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates v. Cincinnati* (1971), 402 U.S. 611, 614, 91 S.Ct. 1686, 29 L.Ed.2d 214. Snyder has failed to make such a showing.

{¶ 12} Upon our review of R.C. 2907.07(E)(2), we find that it is "neither so vague that men of common intelligence must necessarily guess at its meaning, nor unclearly or imprecisely written. The statute meets the constitutional requirement that a person of ordinary intelligence be given a reasonable opportunity to know what is prohibited and to act accordingly." *State v. Phipps* (1979), 58 Ohio St.2d 271, 273, 12 O.O.3d 273, 389 N.E.2d 1128. R.C. 2907.07(E)(2) clearly informs a person of reasonable intelligence that adults are prohibited from using a telecommunications device to solicit a minor for sexual activity, even if the alleged minor being solicited is in actuality a law enforcement officer posing as a minor. "Telecommunications device" is defined as "any instrument, equipment, machine, or other device that facilitates telecommunication, including, but not limited to, a computer, computer network, computer chip, computer circuit,

scanner, telephone, cellular telephone, pager, personal communications device, transponder, receiver, radio, modem, or device that enables the use of a modem." R.C. 2913.01(Y). This definition clearly sets forth what constitutes a "telecommunications device," and the method by which Snyder was convicted of soliciting a minor is included in the definition.

{¶ 13} Snyder cites *State v. Swann* (2001), 142 Ohio App.3d 88, 753 N.E.2d 984, as authority for the elements of solicitation. In the *Swann* case, "solicit" was defined as "to entice, urge, lure or ask." Id. at 89, 753 N.E.2d 984. While Snyder may argue that he did not "solicit" Officer Kinkle during their online conversations, this does not demonstrate that R.C. 2907.07(E)(2) is vague. R.C. 2907.07(E)(2) clearly defines the conduct that is considered to be the offense of importuning. Snyder fails to show that a person of reasonable intelligence would not be able to ascertain from the text of R.C. 2907.07(E)(2) what conduct is prohibited. Rather, Snyder appears to argue that his conduct did not fall within the parameters of R.C. 2907.07(E)(2) because he did not "solicit." We address later in our discussion the affirmative defense of entrapment raised by Snyder.

{¶ 14} There is, however, an additional inquiry that this court must make in determining whether a statute is unconstitutionally vague. That inquiry is whether the statute contains explicit standards as guidance for those who apply them, thereby preventing arbitrary and discriminatory enforcement. *Grayned*, 408 U.S. at 108, 92 S.Ct. 2294, 33 L.Ed.2d 222. Snyder argues that R.C. 2907.07(E)(2) does not limit the tactics that law enforcement officers are permitted to use in finding violations of the statute. Snyder asserts that law enforcement officers encourage criminal behavior to the point that law enforcement officers become active participants in the criminal behavior, thereby entrapping individuals. We find no merit in this argument, although we have chosen to address it later in the opinion.

{¶ 15} Since Snyder failed to make his required showing, we conclude that R.C. 2907.07(E)(2) is not void for vagueness.

{¶ 16} Snyder's next two arguments are closely connected. Snyder argues that R.C. 2907.07(E)(2) is invalid for overbreadth and constitutionally invalid on First Amendment grounds. Snyder asserts that the statute criminalizes potentially protected speech and does not employ the least restrictive means to achieve the state's interest. The state of Ohio asserts that the speech prohibited by R.C. 2907.07(E)(2) is not speech that is protected by the Constitution.

{¶ 17} Our analysis of whether a statute is overbroad requires us to determine whether the statute "is susceptible [of] application to speech protected by the First Amendment." *Phipps*, 58 Ohio St.2d at 275, 12 O.O.3d 273, 389 N.E.2d 1128. If we find that the statute does apply to speech protected by the

First Amendment, "we must then determine if the statute is capable of being authoritatively construed so as to apply only to unprotected speech." Id. A statute is, therefore, considered overbroad "if in its reach it prohibits constitutionally protected conduct." *Grayned,* 408 U.S. at 114, 92 S.Ct. 2294, 33 L.Ed.2d 222.

{¶ 18} The right involved in this cause is the right of free speech under the First and Fourteenth Amendments to the United States Constitution. It is well settled in Ohio that the application of the overbreadth doctrine is limited to the First Amendment context. *Collier,* 62 Ohio St.3d at 272, 581 N.E.2d 552; *Schall v. Martin* (1984), 467 U.S. 253, 268, 104 S.Ct. 2403, 81 L.Ed.2d 207. In determining whether a statute violates the First Amendment, our first inquiry under the analysis to determine whether a statute is overbroad, we must determine whether the statute regulates the content of speech or the conduct related to the speech. *Kelleys Island v. Joyce* (2001), 146 Ohio App.3d 92, 765 N.E.2d 387; *Dayton v. Van Hoose* (Dec. 8, 2000), 2d Dist. No. 18053, 2000 WL 1803867. If a statute attempts to regulate pure First Amendment rights (e.g., speech, expressive conduct, or association), it must be narrowly tailored and designed to further a compelling interest of the state. *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830. However, "where conduct and not merely speech is involved, * * * the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Id. at 615, 93 S.Ct. 2908, 37 L.Ed.2d 830. Therefore, Snyder must show that the potential application of R.C. 2907.07(E)(2) reaches a significant amount of protected speech. *Akron v. Rowland* (1993), 67 Ohio St.3d 374, 618 N.E.2d 138.

{¶ 19} R.C. 2907.07(E)(2) is not aimed at the expression of ideas or beliefs; rather, it is aimed at prohibiting adults from taking advantage of minors and the anonymity and ease of communicating through telecommunications devices, especially the Internet and instant messaging devices, by soliciting minors to engage in sexual activity. The state argues that R.C. 2907.07(E)(2) is narrowly drafted to prohibit solicitation of children, and only such solicitation. There is, however, the possibility that R.C. 2907.07(E)(2) could apply to speech that is protected by the First Amendment. R.C. 2907.07(E)(2) makes criminal the act of soliciting a law enforcement officer to engage in sexual activity if the offender believes, or is reckless in that regard, that the law enforcement officer is thirteen years of age or older but less than sixteen years of age. The First Amendment does protect two adults communicating about and soliciting sexual activity. Therefore, we must proceed to the second part of the analysis to determine whether the statute is overbroad.

{¶ 20} Our second inquiry then becomes whether R.C. 2907.07(E)(2) can be authoritatively construed so as to apply only to unprotected speech. We believe that the statute can be construed in such a way. In examining the state's interest in enacting R.C. 2907.07(E)(2), we find that it is significantly compelling to justify restricting the type of speech regulated by the statute. An obvious purpose of the enactment of R.C. 2907.07(E)(2) is to protect minors from the unlawful solicitation of sexual activity by adults. The United States Supreme Court has recognized that there is a compelling interest in protecting the physical and psychological well-being of minors, which extends to shielding minors from influences that are not obscene by adult standards. *Sable Communications of California, Inc. v. Fed. Communications Comm.* (1989), 492 U.S. 115, 109 S.Ct. 2829, 106 L.Ed.2d 93; *Ginsberg v. New York* (1968), 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195; *New York v. Ferber* (1982), 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113.

{¶ 21} In order to serve its interest and still withstand constitutional scrutiny, the state must choose the least restrictive means to accomplish the compelling interest. *Sable Communications,* 492 U.S. at 126, 109 S.Ct. 2829, 106 L.Ed.2d 93. "It is not enough to show that the Government's ends are compelling; the means must be carefully tailored to achieve those ends." Id.

{¶ 22} In his brief, Snyder relies on the United States Supreme Court case of *Reno v. Am. Civ. Liberties Union* (1997), 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d 874, to support his argument that R.C. 2907.07(E)(2) is overbroad. Snyder asserts that R.C. 2907.07(E)(2) has the effect of "chilling" Internet users from engaging in constitutionally protected speech by threatening criminal sanctions. While the *Reno* court did find that the Communication Decency Act of 1996 ("CDA") was overbroad, its principal reasons for making that finding are not applicable in the case sub judice. The CDA prohibited the knowing transmission of "obscene or indecent" comments to any person under the age of 18 (Section 223[a][1][B], Title 47, U.S.Code) and using the Internet to send or display any comment or image that "in context, depicts or describes, in terms patently offensive as measured by contemporary community standards, sexual or excretory activities or organs" to any person under the age of 18 (Section 223[d][1][B], Title 47, U.S.Code). The *Reno* court noted that the breadth of the CDA was unprecedented in its scope; the statute's prohibitions "embrace[d] all nonprofit entities and individuals posting indecent messages or displaying them on their own computers in the presence of minors." *Reno,* 521 U.S. at 877, 117 S.Ct. 2329, 138 L.Ed.2d 874.

{¶ 23} The *Reno* court found that the CDA banned matter that was "indecent" or "patently offensive" without incorporating all of the required elements under the standard set forth in *Miller v. California* (1973), 413 U.S. 15, 93 S.Ct. 2607, 37

L.Ed.2d 419. *Reno,* 521 U.S. at 873–874, 117 S.Ct. 2329, 138 L.Ed.2d 874. Therefore, the *Reno* court held:

> "In contrast to *Miller* and our other previous cases, the CDA thus presents a greater threat of censoring speech that, in fact, falls outside the statute's scope. Given the vague contours of the coverage of the statute, it unquestionably silences some speakers whose messages would be entitled to constitutional protection." Id. at 874, 117 S.Ct. 2329, 138 L.Ed.2d 874.

{¶ 24} "In holding the CDA unconstitutional, the Supreme Court found that the statute was both vague and overbroad in chilling all communication through the Internet, between adults as well as children." *People v. Barrows* (1998), 177 Misc.2d 712, 728, 677 N.Y.S.2d 672. The *Reno* court was concerned with the "international, geographically borderless nature of the Internet's reach, regardless of the speaker's intent." Id. at 729, 677 N.Y.S.2d 672. R.C. 2907.07(E)(2) is readily distinguishable from the CDA addressed in *Reno.* Unlike the federal statute, R.C. 2907.07(E)(2) is not directed at the mere transmission of certain types of communication over the Internet. The "soliciting" element of the statute is significant in that it requires an individual to "lure" or "entice" a minor to engage in sexual activity with an adult. Such conduct by an adult is distinguishable from "pure speech."

{¶ 25} In the *Barrows* case, also cited by Snyder in support of his claim that R.C. 2907.07(E)(2) is overbroad, the New York Supreme Court stated that the challenged New York statute, "though not as vague as the CDA in light of the definition of what is 'harmful to children,' does suffer from the same imprecision and overbreadth in failing to provide a clear and predictable definition of what transmissions will be deemed 'patently offensive to prevailing standards' of a universal audience." *Barrows,* 177 Misc.2d at 729, 677 N.Y.S.2d 672. The statute challenged in the *Barrows* case that is comparable to R.C. 2907.07(E)(2), the statute challenged in the case sub judice, states:

> "§ 235.22  Disseminating indecent material to minors in the first degree

> "A person is guilty of disseminating indecent material to minors in the first degree when:

> "1.  knowing the character and content of the communication which, in whole or in part, depicts actual or simulated nudity, sexual conduct or sadomasochistic abuse, and which is harmful to minors, he intentionally uses any computer communication system allowing the input, output, examination or transfer, of computer data or computer programs from one computer to another, to initiate or engage in such communication with a person who is a minor; and

> "2.  by means of such communication he importunes, invites or induces a minor to engage in sexual intercourse, deviate sexual intercourse, or sexual

contact with him, or to engage in a sexual performance, obscene sexual performance, or sexual conduct for his benefit." NY Penal Code Section 235.22.

{¶ 26} The following amendments to the statute have been made subsequent to the decision in the *Barrows* case.

"§ 235.22   Disseminating indecent material to minors in the first degree

"* * *

"2.   [Eff. until Nov. 1, 2003.   See, also, subd. 2 below.] by means of such communication he importunes, invites or induces a minor to engage in sexual intercourse, deviate sexual intercourse, or sexual contact with him, or to engage in a sexual performance, obscene sexual performance, or sexual conduct for his benefit.

"2.   [Eff. Nov. 1, 2003.   See, also, subd. 2 above.] by means of such communication he importunes, invites or induces a minor to engage in sexual intercourse, oral sexual conduct or anal sexual conduct, or sexual contact with him, or to engage in a sexual performance, obscene sexual performance, or sexual conduct for his benefit."   NY Penal Code Section 235.22.

{¶ 27} As Snyder states in his brief, the *Barrows* court held Penal Law Section 235.22 invalid for overbreadth and stated its concern that the restrictions of the statute would have a "chilling effect" on protected speech.  *Barrows,* 177 Misc.2d at 730, 677 N.Y.S.2d 672.  Snyder asserts in his brief that we cannot avoid this aspect of the *Barrows* holding and instead choose to limit our analysis to the one-on-one communications between Snyder and "Sarah."  According to Snyder, "[t]his would ignore the facial challenge to R.C. 2907.07(E)(2)."  Appellant's Brief, at 11.  However, Snyder fails to mention that the 1998 *Barrows* case cited in his brief was reversed in part by *People v. Barrows* (2000), 273 A.D.2d 246, 709 N.Y.S.2d 573.  The court relied on the holding of the New York Court of Appeals in *People v. Foley* (2000), 94 N.Y.2d 668, 709 N.Y.S.2d 467, 731 N.E.2d 123 (finding that Penal Law Section 235.22 is not constitutionally overbroad) in determining that the statute is "narrowly tailored to serve a compelling State interest, namely, protecting children from pedophiles."  *Barrows,* 273 A.D.2d at 248, 709 N.Y.S.2d 573.  The court found that "the 'luring' element further narrows the statute because it proscribes conduct, not speech."  Id. In addition, the court found that "the additional element of intent further limits the proscribed conduct; 'the statute should be read as requiring that an individual intend to initiate this kind of communication with a minor and thereby further intend to "importune[ ], invite[ ], or induce [ ]" the minor to engage in sexual conduct for the sender's benefit.'"  Id. quoting *Foley,* 94 N.Y.2d at 679–680, 709 N.Y.S.2d 467, 731 N.E.2d 123.

{¶ 28} Under the logic of the *Barrows* case, R.C. 2907.07(E)(2) is a narrowly construed statute that regulates only speech not protected by the First Amendment. While R.C. 2907.07(E)(2) does apply to speech between an adult and a law enforcement officer who is only posing as a minor, the statute requires that the offender *believe* the other person he is soliciting is a person who is thirteen years of age or older but less than sixteen years of age. The solicitation required by the statute describes acts of communication. The restricted speech identifies "forms of conduct which may provide a predicate for criminal liability." *Foley*, 94 N.Y.2d at 679, 709 N.Y.S.2d 467, 731 N.E.2d 123. R.C. 2907.07(E)(2) is "a preemptive strike against sexual abuse of children by creating criminal liability for conduct directed toward the ultimate acts of abuse." Id. Therefore, the statute is narrowly tailored and does not have a "chilling effect" on speech because the offender would have to believe that he is soliciting a minor for sexual activity, a criminal act, before his conduct would be regulated by R.C. 2907.07(E)(2).

{¶ 29} Furthermore, R.C. 2907.07(E)(2) does not restrict any more conduct or speech than is necessary to achieve the interests of the state. The statute does not restrict speech about sex in general, nor does it restrict adults and minors from communicating about sex. The statute also does not restrict speech about adults engaging in sexual conduct with minors. The statute prohibits only speech that solicits minors to engage in illegal sexual activity with adults. Unlike the restrictions placed on speech by the CDA in the *Reno* case, R.C. 2907.07(E)(2) does not "lack[ ] the precision that the First Amendment requires when a statute regulates the content of speech." *Reno*, 521 U.S. at 874, 117 S.Ct. 2329, 138 L.Ed.2d 874. Therefore, we conclude that R.C. 2907.07(E)(2) is not overbroad and does not infringe on First Amendment rights.

{¶ 30} Snyder's next argument challenges the constitutionality of R.C. 2907.07(E)(2) under the Commerce Clause. Snyder reiterates the argument that R.C. 2907.07(E)(2) violates the First and Fourteenth Amendments and urges this court to follow the holdings of New York and Michigan courts in finding that the statute in the case sub judice has the potential to subject Internet users to inconsistent regulations across the nation.

{¶ 31} One of the cases that Snyder relies on in support of his argument is *People v. Barrows* (1998), 177 Misc.2d 712, 677 N.Y.S.2d 672, which, as we mentioned earlier, has been reversed in part by the New York Court of Appeals. While the New York Supreme Court found that Penal Law Section 235.22 violated the Commerce Clause, the court of appeals held that "the statute represents a legitimate exercise of the state's police power and does not discriminate against or burden interstate trade." *Barrows*, 273 A.D.2d at 247, 709 N.Y.S.2d 573. The *Barrows* court based its decision on the holding of *Foley*,

which held that the statute "regulates the conduct of individuals who intend to use the Internet to endanger the welfare of children." *Foley*, 94 N.Y.2d at 684, 709 N.Y.S.2d 467, 731 N.E.2d 123. The *Foley* court found that the statute contained the significant language that the communication be intended to lure a minor into prohibited sexual conduct, which made it a valid exercise of the state's police power. Id. The *Foley* court further stated that it was "hard pressed to ascertain any legitimate commerce that is derived from the intentional transmission of sexually graphic images to minors for the purpose of luring them into sexual activity." Id.

{¶ 32} Likewise, we conclude that R.C. 2907.07(E)(2) is a valid exercise of police power in the state of Ohio. R.C. 2907.07(E)(2) is narrowly tailored to serve the interest of the state in promoting the welfare of children. R.C. 2907.07(E)(2) is unlike many of the statutes challenged in other states and found to be unconstitutional due to vagueness or overbreadth. *Cyberspace Communications, Inc. v. Engler* (E.D.Mich.1999), 55 F.Supp.2d 737; *Am. Libraries Assn. v. Pataki* (S.D.N.Y.1997), 969 F.Supp. 160. R.C. 2907.07(E)(2) does not regulate the mere transmission of pictures, images, or messages that are deemed harmful to children. Rather, R.C. 2907.07(E)(2) regulates the conduct of adults who seek to solicit minors to engage in sexual activity in conversations by means of the Internet or other telecommunications devices. Since such conduct is not protected by the First Amendment and serves no meaningful purpose, R.C. 2907.07(E)(2) does not unduly interfere with interstate commerce.

{¶ 33} In his final argument challenging the constitutionality of R.C. 2907.07(E)(2), Snyder argues that the statute allows law enforcement to entrap citizens, thereby violating their substantive due process rights. Snyder presents the affirmative defense of entrapment to diminish his culpability under 2907.07(E)(2).

{¶ 34} The Supreme Court of Ohio has stated that "[t]he defense of entrapment is established where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute." *State v. Doran* (1983), 5 Ohio St.3d 187, 5 OBR 404, 449 N.E.2d 1295, paragraph one of syllabus. The defense of entrapment is not established when government officials "merely afford opportunities or facilities for the commission of the offense" and it is shown that the accused was predisposed to commit the offense. *Sherman v. United States* (1958), 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848. Therefore, the "police officer [must] plant[ ] in the mind of the defendant the original idea or purpose, thus furnishing from the start the incentive (moving force) to commit an offense that the defendant had not

considered and which he would not have carried out except for that incentive (moving force)." *State v. Laney* (1991), 61 Ohio Misc.2d 688, 694, 583 N.E.2d 479.

{¶ 35} Snyder asserts that he did not solicit "Sarah"; rather, he only described sexual conduct in which he has engaged or likes to engage. Snyder argues that it was law enforcement in this case who was the soliciting party. Snyder asserts that Officer Jeff Kinkle was the one to "entice, urge, lure, or ask," when he asked Snyder to describe what he would do if he and "Sarah" met.

{¶ 36} As previously pointed out, Ohio law does not recognize merely affording opportunities or facilities for committing an offense as a legal defense. *Laney*, 61 Ohio Misc.2d at 695, 583 N.E.2d 479; see, also, *State v. Dutton Drugs, Inc.* (1965), 3 Ohio App.2d 118, 32 O.O.2d 204, 209 N.E.2d 597, and *Sorrells v. United States* (1932), 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413:

> "The law permits a police officer to go as far as to suggest an offense and to provide the opportunity for the defendant to commit the offense. If the defendant is already disposed to commit the offense and acts pursuant to a criminal idea or purpose of his own, then there is no entrapment and the defendant can be found guilty." *Laney*, 61 Ohio Misc.2d at 695, 583 N.E.2d 479.

{¶ 37} Officer Jeff Kinkle sat dormant when he entered the Ohio Chat Room on Yahoo Instant Messenger and did not initiate conversations with Snyder. In fact, Snyder initiated every conversation with "Sarah 420 Hottie" and brought up the sexual topics. Snyder is also the party who initiated conversation about meeting in person. There is no evidence in the record that supports Snyder's contention that the criminal design originated with Officer Jeff Kinkle and that he implanted the idea of sexual activity with a 14–year–old girl with Snyder. Officer Kinkle merely provided the opportunity for Snyder to commit the offense of importuning by creating a screen name and profile and signing on to Yahoo Instant Messenger. Snyder was the party that initiated conversation with "Sarah 420 Hottie" and brought up the topic of sexual activity. Officer Kinkle merely agreed to Snyder's proposal to meet in person. Therefore, we conclude that law enforcement officers did not entrap Snyder into committing the offense of importuning. In addition, we find that R.C. 2907.07(E)(2) does adequately limit the tactics of law enforcement in apprehending offenders of the importuning statute.

{¶ 38} Having found no merit with Snyder's challenges to the constitutionality of R.C. 2907.07(E)(2), we overrule Snyder's first assignment of error.

{¶ 39} In his second assignment of error, Snyder argues that R.C. 2907.07(E)(2) is unconstitutional as applied by "R.C. 2950.01(D)(iv)," which we assume Snyder meant as R.C. 2950.01(D)(1)(b)(vi). Snyder contends that the

distinction in R.C. 2907.07 between *in person* solicitation to engage in sexual activity and solicitation to engage in sexual activity through a *telecommunications device* is arbitrary and capricious, as classified under R.C. 2950.01.

{¶ 40} R.C. 2907.07(C) prohibits in-person solicitation of minors, stating:

"No person shall solicit another, not the spouse of the offender, to engage in sexual conduct with the offender, when the offender is eighteen years of age or older and four or more years older than the other person, and the other person is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.07(C).

{¶ 41} As discussed earlier in the opinion, R.C. 2907.07(E) prohibits the solicitation of a minor (13 years of age or older but less than 16 years of age) by means of telecommunications devices. It is the classification under R.C. 2950.01 with which Snyder takes issue. R.C. 2950.01 defines "sexual predators," "habitual sex offenders," and "sexually oriented offenders." A "sexually oriented offense" is defined by R.C. 2950.01 as follows:

"(D) 'Sexually oriented offense' means any of the following:

"(1) Any of the following violations of offenses committed by a person eighteen years of age or older:

"* * *

"(b) Any of the following offenses involving a minor, in the circumstances specified:

"* * *

"(vi) A violation of division (D) or (E) of section 2907.07 of the Revised Code."

{¶ 42} A violation of R.C. 2907.07(C) is not included in the classifications under R.C. 2950.01. Snyder asserts that this distinction could result in two offenders being classified in a different manner for engaging in the same prohibited conduct, thereby violating the Equal Protection Clause of the Fourteenth Amendment and granting the prosecution too much discretion in determining under which section of R.C. 2907.07 to charge the offender. The Ohio Supreme Court in *State v. Williams* (2000), 88 Ohio St.3d 513, 728 N.E.2d 342, discussed the Fourteenth Amendment's Equal Protection Clause as it related to distinguishing between sex offenders subject to the mandates of R.C. 2950.01 and sex offenders who were not incarcerated as of the effective date of the statute. The court stated that "[t]he Equal Protection Clause prevents states from treating people differently under its laws on an arbitrary basis." Id. at 530, 728 N.E.2d 342; *Harper v. Virginia State Bd. of Elections* (1966), 383 U.S. 663, 681, 86 S.Ct. 1079, 16 L.Ed.2d 169 (Harlan, J., dissenting). "Whether any such differing treatment is to be deemed arbitrary depends on whether or not it reflects an appropriate

differentiating classification among those affected; the clause has never been thought to require equal treatment of all persons despite differing circumstances." Id.

{¶ 43} It is also important to note that "[u]nder the Equal Protection Clause, a legislative distinction need only be created in such a manner as to bear a rational relationship to a legitimate state interest." Id. A higher level of scrutiny need only be used when a suspect class or fundamental constitutional right is involved. Id. Sex offenders are not considered a suspect class. Id.; *Cutshall v. Sundquist* (C.A.6, 1999), 193 F.3d 466, 482; *Artway v. Atty. Gen. of New Jersey* (C.A.3, 1996), 81 F.3d 1235, 1267. Chapter 2950 is not considered to implicate a fundamental right either. *Williams,* 88 Ohio St.3d at 530, 728 N.E.2d 342. Therefore, we apply the rational-basis standard and grant substantial deference to the General Assembly. Id. at 531, 728 N.E.2d 342. The burden is on Snyder to prove that there is no rational basis between the distinctions made in R.C. 2950.01 and the state's interests. By challenging the legislation, Snyder must "negative every conceivable basis before an equal protection challenge will be upheld." Id.

{¶ 44} The state interest purportedly achieved by the difference in classification under R.C. 2950.01 of offenders convicted under R.C. 2907.07(C) and 2907.07(E) is the number of victims that can conceivably be reached at one time and the anonymity upon which the offender can rely. In-person solicitation usually involves an offender targeting one victim at a time, and the identification of the offender is more readily ascertainable. On the other hand, solicitation by means of telecommunications devices allows an offender to target countless victims by simply logging onto the Internet. Moreover, the offender is able to solicit anonymously by using a screen name, which makes detection and identification of the offender more difficult.

{¶ 45} We, therefore, conclude that the General Assembly had a rational basis for creating the distinction between R.C. 2907.07(C) and 2907.07(E), as applied in R.C. 2950.01. Since Snyder is unable to meet his burden of negating every conceivable basis for the distinction he challenges between divisions (C) and (E) of R.C. 2907.07, we hold that the distinction does not violate the Equal Protection Clause of the Fourteenth Amendment. Snyder's second assignment of error is, therefore, overruled.

{¶ 46} Finding no merit with Snyder's assignments of error, the judgment of the Common Pleas Court of Allen County is affirmed.

Judgment affirmed.

WALTERS and CUPP, JJ., concur.