DECISION.
{¶ 1} After a bench trial, the defendant-appellant, Marc Anthony, was convicted of two counts of importuning, in violation of R.C. 2907.07(E)(2), a fifth-degree felony. Anthony was acquitted of one count of attempted unlawful sexual conduct with a minor. Prior to trial, Anthony had moved to dismiss the charges, but the motion to dismiss was overruled. Anthony was sentenced to forty days' confinement in the Hamilton County Justice Center for each conviction. The sentences were ordered to run concurrently. Anthony is also subject to five years of community control for each conviction. The five-year periods were ordered to run concurrently as well.
 {¶ 2} On appeal, while Anthony numbers five assignments of error in his appellate brief, we have found only four set forth. We address Anthony's assignments of error as numbered in his brief to limit confusion. Additionally, since Anthony makes similar arguments in support of different assignments of error, we address them when they are first made.
 {¶ 3} Through a series of e-mails that commenced on September 25, 2002, and ended on October 11, 2002, Anthony engaged in discussions in an Internet chat room with a Hamilton County deputy sheriff who posed as a young girl and who told Anthony on-line that "she" was fourteen years old. The officer used an on-line name of "Emma 13 Cinci." The officer testified that the thirty-three-year-old Anthony advised him on-line that he was thirty years old. The series of e-mails culminated in an arrangement for Anthony to meet the "girl" at a store in the Kenwood Mall on October 11, 2002, at 3:30 p.m. Anthony gave a description of the car that he would be driving. Anthony was met by a woman officer who posed as the "girl" and was arrested at the rendezvous location.
 {¶ 4} The plan had been for Anthony and the girl to proceed to a hotel where the "girl" would be given a full-body massage. Among the e-mail exhibits were Anthony's inquiries whether the "girl" had been with an older man before. "[A]fter shopping, we could go to the hotel and i [sic] could give you a full body massage like you've never had. * * * i [sic] thought i [sic] would just see how you felt after the massage. * * * * ok, what will you tell your parents?" Anthony further inquired, "[S]o would you want me to use baby oil on you for the body massage?" Among the items that Anthony had with him in the car when arrested were body oil and lotion and several tubes of K-Y personal lubricant jelly.
 {¶ 5} In the first and second assignments of error, argued together by Anthony, Anthony contends that there was insufficient evidence to convict him and that the convictions, as well as the trial court's sexual-orientation findings, were contrary to the manifest weight of the evidence. We address the sexual-orientation findings in the fifth assignment of error.
 {¶ 6} In evaluating the sufficiency of the evidence, we must determine whether, after viewing the evidence in a light most favorable to the state, any rational trier of fact could have found the essential elements of the crimes proved beyond a reasonable doubt.[1] The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.[2]
 {¶ 7} R.C. 2907.07(E)(2), at the time of the offense, but since renumbered R.C. 2907.07(D)(2), provided that "no person shall solicit another by means of a telecommunications device, as defined in section 2913.01 of the Revised Code, to engage in sexual activity with the offender when the offender is eighteen years of age or older and * * * [t]he other person is a law enforcement officer posing as a person who is thirteen years of age or older but less than sixteen years of age, the offender believes that the other person is thirteen years of age or older but less than sixteen years of age or is reckless in that regard, and the offender is four or more years older than the age the law enforcement officer assumes in posing as the person who is thirteen years of age or older but less than sixteen years of age."
 {¶ 8} A rational trier of fact could have found the essential elements of the crimes proved beyond a reasonable doubt. Like the defendant in State v. Tarbay,[3] a case factually similar to the one at bar, Anthony was convicted for his intent to solicit, using the Internet, a person he believed to be a minor to engage in sexual activity with him. The record shows that Anthony intended to give the "girl" a full-body massage and arrived at the rendezvous location with specific items to be used for that purpose, as he had informed the "girl" earlier in the e-mails. The record also shows that Anthony was told in the e-mails he received that "she" was fourteen years old. On this record, there was sufficient evidence to sustain Anthony's convictions.
 {¶ 9} Nevertheless, even when the evidence is sufficient to support a conviction, an appellate court may still reverse the conviction as being against the manifest weight of the evidence.[4] A review of the manifest weight of the evidence puts the appellate court in the role of a "thirteenth juror."[5] We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice.[6] A new trial should be granted on the weight of the evidence only in exceptional cases.[7]
 {¶ 10} After reviewing the record, we cannot hold that the trier of fact lost its way and created such a manifest miscarriage of justice that we must reverse Anthony's convictions and order a new trial. Therefore his convictions were not against the manifest weight of the evidence.[8]
 {¶ 11} Anthony also raises a void-for-vagueness challenge to the importuning statute at issue by arguing that "statutes must be sufficiently clear that persons of ordinary intelligence do not have to guess at their meaning," and that "all persons [must be] able to conform their conduct to the requirements of the law, to obey the law and to avoid violating it." Anthony argues that the state failed to prove that he knew he was communicating with a law enforcement officer; that there was no "real" girl; and that the state failed to prove any sexual activity. From this, he concludes that his convictions were based on insufficient evidence.
 {¶ 12} To survive a void-for-vagueness challenge, the statute at issue must be written so that a person of common intelligence is able to determine what conduct is prohibited, and the statute must provide sufficient standards to prevent arbitrary and discriminatory enforcement.[9] A void-for-vagueness challenge to the importuning statute at issue was rejected by the Second Appellate District in State v. Turner.[10] We agree with that court's reasoning. Concerning the term "reckless," while it is not specifically defined in the Ohio Revised Code, the Ohio Supreme Court has noted that persons of ordinary intelligence can understand the meaning of the word.[11] Concerning the term "sexual activity," the Ohio Revised Code sets forth the following definition in R.C.2907.01(C): sexual conduct or sexual contact, or both. Sexual contact is defined in R.C. 2907.01(B) as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
 {¶ 13} While a law enforcement officer presents the opportunity for the solicitation to occur under the importuning statute at issue, the offender initiates the unlawful solicitation under the mistaken assumption that the officer is a minor. The statute simply employs investigative techniques that have long been accepted in other criminal contexts, including "sting" operations.[12] Moreover, Ohio law does not recognize that merely affording opportunities or facilities for committing an offense is a defense available to the accused.[13]
 {¶ 14} Additionally, the statute does not require that an offender know that the person being solicited is a minor, but rather only that "the offender believe" that the other person is thirteen years of age or older but less than sixteen years of age or is reckless in that regard.[14] "To `believe' is `to hold an opinion,' * * * to consider to be true or honest."[15] Thus, the impossible is not required, i.e., that the offender "know" that the fictional party is a minor.[16] As the Second Appellate District has already concluded, we are in agreement that the importuning statute at issue is not void for vagueness because persons of ordinary intelligence can easily tell what conduct is prohibited, and because standards are provided to prevent arbitrary or discriminatory enforcement.[17]
 {¶ 15} Anthony also argues that a legislative enactment to protect children from harmful communication cannot overcome theFirst Amendment protection for the communication where no actual child is involved, citing Free Speech Coalition v.Ashcroft.[18] Concerning the First Amendment arguments raised by Anthony, in State v. Tarbay,[19] a case factually similar to the one at bar, we have already addressed them. Our disposition of the First Amendment challenges inTarbay follows and is also in harmony with the decisions of the Third Appellate District in State v. Snyder[20] and the Second Appellate District in State v. Turner.[21]
 {¶ 16} In Tarbay, we rejected the defendant's arguments that R.C. 2907.07(E)(2) was unconstitutional on its face and as applied to him because it infringed upon the right of free speech guaranteed under the First Amendment to the United States Constitution. We noted that, consistent with United States Supreme Court precedent, First Amendment protection does not extend to speech that is incidental to or part of a course of criminal conduct, i.e., soliciting a minor child for sex, and that the importuning statute is narrowly tailored to serve the government's compelling interest.[22] The importuning statute refers only to solicitation, and the harm is in the asking.[23] The Child Pornography Prevention Act of 1996 at issue in Ashcroft is distinguishable from the importuning statute because the latter does not prevent the expression of ideas, but rather targets conduct: solicitations of children to engage in sexual activity, which is not protected speech.[24] The statute prohibits adults from taking advantage of minors and of the anonymity and ease of communicating by soliciting minors to engage in sexual activity through telecommunications devices, especially the Internet and instant-messaging devices.[25] Accordingly, we overrule Anthony's first and second assignments of error.
 {¶ 17} We have found no third assignment of error set forth in Anthony's appellate brief.
 {¶ 18} With respect to the fourth assignment of error, we have already addressed several of Anthony's arguments challenging the constitutionality of the importuning statute. But Anthony does raise one argument for the first time: that the importuning statute violates the Commerce Clause of the United States Constitution. Both the Second and Third Appellate Districts[26] have concluded that the importuning statute does not unduly interfere with interstate commerce, and we agree with their reasoning. Initially, for the proposition advanced by Anthony, as did the defendant in State v. Cunningham, he relies on American Libraries Assn. v. Pataki.[27] The Second Appellate District noted that the reliance by the defendant inCunningham was misplaced because the plaintiffs in Pataki did not challenge the portions of the New York statute that prohibited adults from luring children into sexual contact by communicating with them on the Internet.[28]
 {¶ 19} When a state does impose a regulation that unduly burdens interstate commerce and impedes free trade, it may violate the Commerce Clause, but where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it should be upheld unless the burden imposed is clearly excessive in relation to the putative local benefits.[29] If a legitimate local purpose is found, then the question becomes one of degree, and the extent of the burden that will be tolerated depends upon the nature of the local interest involved and on whether it could be promoted as well with a lesser impact on interstate activities.[30] In State v. Bolden, the Second Appellate District quoted with approval Hatch v. Superior Courtof San Diego County: "While a ban on the simple communication of certain materials may interfere with an adult's legitimate rights, a ban on communication of specified matter to a minor for purposes of seduction can only affect the rights of the very narrow class of adults who intend to engage in sex with minors. We have found no case which gives such intentions or the communications employed in realizing them protection under the dormant commerce clause."[31] The Bolden court concluded, "R.C. 2907.07(E)(2) regulates the conduct of adults who seek to solicit minors to engage in sexual activity in conversation by means of the Internet or other telecommunications devices. Since such conduct is not protected by the First Amendment and serves no meaningful purpose, R.C. 2907.07(E)(2) does not unduly interfere with interstate commerce."[32] The Bolden court concluded that Ohio has jurisdiction to prosecute crimes that are partially committed in the state and also where the object of the crime is located in Ohio.[33] Accordingly, the fourth assignment of error is overruled.
 {¶ 20} In the fifth assignment of error, Anthony contends that the reporting requirements imposed by the trial court after it found him to be a sexually-oriented offender pursuant to R.C. Chapter 2950 violated his substantive-due-process and equal-protection rights under the Fourteenth Amendment. In Statev. Hayden, the Ohio Supreme Court, in addressing a procedural-due-process challenge, explained that a sexually-oriented offender is a person who has committed a sexually-oriented offense as that term is defined in R.C.2950.01(D), but who does not fit the description of either a habitual sex offender or a sexual predator.[34] The court further noted, "In State v. Cook (1998), 83 Ohio St.3d 404,412, 700 N.E.2d 570, we held that `the registration and address verification provisions of R.C. Chapter 2950 are de minimis procedural requirements that are necessary to achieve the goals of R.C. Chapter 2950.'"[35] The court pointed out that if a defendant is neither a habitual sex offender nor a sexual predator, but is convicted of a sexually-oriented offense, a defendant is automatically classified as a sexually-oriented offender and therefore must register with the sheriff of the county in which he resides.[36] Pursuant to R.C. Chapter 2950, the court stated, if a defendant has been convicted of a sexually-oriented offense as defined in R.C. 2950.01(D) and is neither a habitual sex offender nor a sexual predator, the sexually-oriented-offender designation attaches as a matter of law.[37] Clearly as of 2002, registration is still considered by the Ohio Supreme Court to be a de minimis procedural matter.
 {¶ 21} We agree with the state that Anthony's importuning convictions involve sexually-oriented offenses under R.C.2950.01(D). The current version of R.C. 2950.01(D) provides, "`Sexually oriented offense' means any of the following: (1) Any of the following violations or offenses committed by a person eighteen years of age or older: (a) Regardless of the age of the victim of the offense, a violation of section 2907.02, 2907.03,2907.05, or 2907.07 of the Revised Code * * *." We note that absolutely no R.C. 2907.07 subsections are set out in the current sexually-oriented-offense definition in R.C. 2950.01(D). At the time of Anthony's convictions, R.C. 2950.01(D)(1)(b) provided in pertinent part, "Any of the following offenses involving a minor, in the circumstances specified: * * * (vi) A violation of division (D) or (E) of section of 2907.07 of the Revised Code." We do not agree that a plain reading of R.C. 2950.01(D)(1)(b)(vi) creates an ambiguity to the degree asserted by Anthony that would make his violations of R.C. 2907.07(E)(2) exempt from the definition of a sexually-oriented offense. The Second Appellate District has come to a similar conclusion.[38]
 {¶ 22} But Anthony also raises constitutional challenges to the registration requirement for sexually-oriented offenders. InState v. Boeddeker[39] we considered due-process and equal-protection challenges to R.C. Chapter 2950 similar to those raised by Anthony now. We held that "the registration requirements of R.C. 2950.04 through 2950.06 are unconstitutional as applied to sexually oriented offenders." But we were unable to provide the relief that Boeddeker asked for because there was no registration order in the sentencing court's entry.
 {¶ 23} The record in the case sub judice shows that the trial court included a registration order in its sentencing entry.[40] Therefore, unlike in Boeddeker, we have a basis to vacate that portion of the sentencing entry ordering Anthony to register with the sheriff as a sexually-oriented offender. Consequently, we sustain in part Anthony's contentions of unconstitutionality in the fifth assignment of error, and vacate that portion of the sentencing entry ordering him to register with the sheriff in the county of his residence. In all other respects, the trial court's judgment is affirmed.
Judgment affirmed in part and vacated in part.
Doan and Painter, JJ., concur.
[1] State v. Waddy (1992), 63 Ohio St.3d 424, 430,588 N.E.2d 819; State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[2] See State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus.
[3] 157 Ohio App.3d 261, 2004-Ohio-2721, 810 N.E.2d 979
(subsequent to entering no-contest pleas, the defendant was convicted of multiple counts of importuning and one count of attempted unlawful sexual conduct).
[4] See State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541.
[5] State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541.
[6] State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[7] State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52,678 N.E.2d 541, citing State v. Martin (1983), 20 Ohio App.3d 172,485 N.E.2d 717.
[8] See id.; State v. Allen (1990), 69 Ohio App.3d 366, 374,590 N.E.2d 1272.
[9] See State v. Williams, 88 Ohio St.3d 513, 532,2000-Ohio-428, 728 N.E.2d 342.
[10] 156 Ohio App.3d 177, 2004-Ohio-464, 805 N.E.2d 124, at ¶ 30.
[11] See Turner at ¶ 26, citing State v. Phipps (1979),58 Ohio St.2d 271, 274, 389 N.E.2d 1128.
[12] See Turner at ¶ 29; see, also, State v. Cunningham,156 Ohio App.3d 714, 2004-Ohio-1935, 808 N.E.2d 488, at ¶ 58 (legal impossibility is not a defense).
[13] See State v. Snyder, 155 Ohio App.3d 453,2003-Ohio-6399, 801 N.E.2d 876, at ¶ 36.
[14] See Turner at ¶ 28.
[15] See id.
[16] See id.
[17] See id. at ¶ 30.
[18] (2003), 535 U.S. 234, 122 S.Ct. 1389.
[19] 157 Ohio App.3d 261, 2004-Ohio-2721, 810 N.E.2d 979.
[20] 155 Ohio App.3d 453, 2003-Ohio-6399, 801 N.E.2d 876.
[21] 156 Ohio App.3d 177, 2004-Ohio-464, 805 N.E.2d 124.
[22] See Tarbay at ¶ 16; see, also, State v. Snyder,155 Ohio App.3d 453, 2003-Ohio-6399, 801 N.E.2d 876.
[23] See State v. Bolden, 2nd Dist. No. C.A. 19943, 2004-Ohio-2315, at ¶ 37.
[24] See Tarbay at ¶ 11-14.
[25] See Tarbay at ¶ 13, citing Snyder at ¶ 19.
[26] See State v. Bolden, 2nd Dist. No. C.A. 19943, 2004-Ohio-2315, at ¶ 42-47; State v. Cunningham,156 Ohio App.3d 714, 2004-Ohio-1935, 808 N.E.2d 488, at ¶ 33-60; State v.Snyder, 155 Ohio App.3d 453, 2003-Ohio-6399, 801 N.E.2d 876, at ¶ 30-32.
[27] (S.D.N.Y. 1997), 969 F. Supp. 160.
[28] See Cunningham at ¶ 41.
[29] See Bolden at ¶ 43.
[30] See id.
[31] See Bolden at ¶ 45, quoting Hatch v. Superior Court ofSan Diego County (2000), 80 Cal.App.4th 170, 195,94 Cal.Rptr.2d 453.
[32] See Bolden at ¶ 46-47, quoting State v. Snyder,155 Ohio App.3d 453, 467, 2003-Ohio-6399, 801 N.E.2d 876, at ¶ 32.
[33] See Bolden at ¶ 44, quoting State v. Cunningham,156 Ohio App.3d 714, 2004-Ohio-1935, 808 N.E.2d 488, at ¶ 51.
[34] See State v. Hayden, 96 Ohio St.3d 211, 213,2002-Ohio-4169, 773 N.E.2d 502, at ¶ 9.
[35] See id. at ¶ 15.
[36] See id. at ¶ 15.
[37] See id. at ¶ 18.
[38] See Bolden at ¶ 58-73.
[39] (Feb. 13, 1998), 1st Dist. No. C-970471; but, see, Statev. Pace (May 21, 1999), 1st Dist. No. C-980659.
[40] See t.d. 37.