The STATE of Ohio, Appellee,

v.

TURNER, Appellant.

[Cite as *State v. Turner,* 156 Ohio App.3d 177, 2004-Ohio-464.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 19941.

Decided Feb. 6, 2004.

180

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and R. Lynn Nothstine, Assistant Prosecuting Attorney, Appellate Division, for appellee.

Dwight D. Brannon, for appellant.

BROGAN, Judge.

{¶ 1} After receiving an unfavorable suppression decision, defendant, Kevin A. Turner, pled no contest to charges of attempting to commit unlawful sexual conduct with a minor, importuning, and possession of criminal tools. These charges arose from an Internet "chat" session and certain actions Turner took thereafter.

{¶ 2} On July 15, 2002, Detective Donald Duncan was online, posing as a 14–year–old boy named "Casey." At the time, Duncan was 45 years old and was using a computer at the Brookville, Ohio Police Department, where he was employed. Turner made the initial contact by asking Casey how he was doing. From there, the conversation progressed to a description of the parties' relative "statistics," including ages and penis sizes. After finding out that Casey was 14, Turner asked Casey whether he was "horny." Pictures were then exchanged, via computer. Duncan sent Turner a picture of a 27–year–old Brookville police

officer, taken when the officer was a child. Turner responded by sending a photo that showed Turner semi-nude and in a state of arousal.

{¶ 3} Following the picture exchange, Turner asked Casey whether he wanted to "get naked together" that day. Duncan agreed, and arrangements were made for Turner to pick Casey up near a community theater in Brookville, in about 45 minutes. Turner indicated that he would be driving a green car. He also said that he would page Casey when he arrived in town, and would enter all "4's," to identify himself. In turn, Duncan told Turner that Casey would be wearing jeans and a purple shirt. During the online chat, Turner had also said that his name was Kevin.

{¶ 4} Duncan arranged for backup and went to the scene. At the appointed time, Duncan's pager went off, and the identifying numbers appeared on the pager. Duncan also noticed a green car driving by. The plate was checked, and the car was found to be registered to Kevin Turner, which was consistent with the name given online. When the car went by, Duncan saw the driver looking into the community theater. The car came back again, slowly, by the theater, and pulled into a back lot. The individual in the car then began watching the theater from across the street. After observing the subject for a while, Duncan had an officer in a marked police car make the initial contact.

{¶ 5} Subsequently, Duncan went up to the green car and introduced himself as Detective Duncan with the Brookville Police Department. The individual in the car matched the picture that had been sent to Duncan. When Duncan said that he knew why Turner had come to town, Turner just sat there. Turner then said that he knew he should not have come.

{¶ 6} Duncan administered verbal *Miranda* rights as Turner sat in the car. After Turner exited the car, Duncan handcuffed him and took him to the police station. Turner appeared to understand what was being said to him. During the ride to the station, Turner began laughing, in a sort of controlled giggle. When Duncan asked Turner why he was laughing, Turner said, "You told me you were going to have a purple shirt on." (Duncan did have a purple polo shirt on at the time of the arrest.) During the ride, Duncan asked Turner where he was employed, and Turner stated that that was going to be a problem, because he was a minister.

{¶ 7} After they arrived at the station, Duncan administered written *Miranda* warnings, which Turner signed. Turner then waived his rights, and the two men discussed what had happened over the Internet. Turner also wrote out a statement indicating that the reason he was meeting "Casey" was for sex. In addition, Turner consented to a search of his home, and accompanied Duncan to the house for the search. The police removed the computer, printer, monitor, and some diskettes, which were taken to the Regional Crime Lab. Turner was

subsequently indicted for attempting to commit unlawful sexual activity with a minor, importuning, and possession of criminal tools (the computer).

{¶ 8} Before trial, Turner filed a motion to suppress. However, after a hearing, in which the above facts were elicited, the trial court overruled the motion to suppress. The court first found probable cause for the arrest. The court also concluded that Turner had volunteered certain statements and had waived his *Miranda* rights regarding other statements that were made. Finally, the court found that Turner voluntarily consented to the search of his home.

{¶ 9} As we indicated, Turner pled no contest to the charges after the motion to suppress was overruled. He was then sentenced to five years of community control and to intensive probation supervision with a sex offender specialist. In addition, Turner was designated a sexually oriented offender.

{¶ 10} On appeal, Turner raises nine assignments of error, challenging the constitutionality of the statutes under which he was convicted, the legality of the arrest and search, and other actions of the trial court. We will deal with each assignment of error separately but do note, as a preliminary matter, that we find all nine assignments of error without merit. Accordingly, the trial court's judgment will be affirmed.

I

{¶ 11} In the first assignment of error, Turner contends that Counts I and II of the indictment violate the Due Process Clause of the United States Constitution and Section 10, Article I of the Ohio Constitution due to the vagueness of the statutory language. In this regard, Turner claims that the statutes under which he was charged do not adequately define the prohibited conduct and negate affirmative defenses like impossibility, mistake of fact, and abandonment. Turner also claims that the statutes infringe on freedom of speech.

{¶ 12} Count I of the indictment charges Turner with violating R.C. 2907.04(A) and (B)(3), by attempting to engage in unlawful sexual conduct with a minor. This statute provides:

{¶ 13} "(A) No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.

{¶ 14} "(B) Whoever violates this section is guilty of unlawful sexual conduct with a minor.

{¶ 15} "* * *

{¶ 16} "(3) Except as otherwise provided in division (B)(4) of this section, if the offender is ten or more years older than the other person, unlawful sexual conduct with a minor is a felony of the third degree."

{¶ 17} "Sexual conduct" as used in R.C. 2907.01 to R.C. 2907.37 is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

{¶ 18} "[T]o survive a void-for-vagueness challenge, the statute at issue must be written so that a person of common intelligence is able to determine what conduct is prohibited, and the statute must provide sufficient standards to prevent arbitrary and discriminatory enforcement." *State v. Williams* (2000), 88 Ohio St.3d 513, 532, 728 N.E.2d 342. "A statute will not be declared void, however, merely because it could have been worded more precisely. * * * Mathematical precision has never been required." Id. Furthermore, facial-vagueness challenges are "generally allowed only where the statute is vague in all of its applications." Id. According to the Ohio Supreme Court, "[t]his means that the statute does not supply a definitive standard by which to determine what conduct is included and what conduct is excluded." Id.

{¶ 19} After applying these standards to R.C. 2907.04, we do not find the statute void for vagueness. To the contrary, persons of ordinary intelligence could easily tell what conduct is prohibited.

{¶ 20} Count II of the indictment charges Turner with violating R.C. 2907.07(E)(2). After the alleged crime, subsection (E) was renumbered as R.C. 2907.07(D), but otherwise remained the same. This subsection provides:

{¶ 21} "No person shall solicit another by means of a telecommunications device, as defined in section 2913.01 of the Revised Code, to engage in sexual activity with the offender when the offender is eighteen years of age or older and either of the following applies:

{¶ 22} "(1) The other person is thirteen years of age or older but less than sixteen years of age, the offender knows that the other person is thirteen years of age or older but less than sixteen years of age or is reckless in that regard, and the offender is four or more years older than the other person.

{¶ 23} "(2) The other person is a law enforcement officer posing as a person who is thirteen years of age or older but less than sixteen years of age, the offender believes that the other person is thirteen years of age or older but less than sixteen years of age or is reckless in that regard, and the offender is four or

more years older than the age the law enforcement officer assumes in posing as the person who is thirteen years of age or older but less than sixteen years of age."

{¶ 24} The only arguable "terms" in this statute are "sexual activity," "reckless," and "telecommunication device." However, these terms are not confusing. Instead, they are specifically defined either in the Ohio Revised Code or are understood through common usage.

{¶ 25} For example, R.C. 2907.01(C) defines "sexual activity" as "sexual conduct or sexual contact, or both." Sexual conduct is defined as conduct like vaginal or anal intercourse, fellatio, etc. See R.C. 2907.01(A). Similarly, "sexual contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). Most people would interpret "sexual activity" to mean activity like intercourse or the touching of erogenous zones. However, the legislature has removed any doubt by specifying the conduct involved. *State v. Phipps* (1979), 58 Ohio St.2d 271, 273, 12 O.O.3d 273, 389 N.E.2d 1128.

{¶ 26} In *Phipps,* the Ohio Supreme Court also noted that persons of ordinary intelligence would understand the meaning of the word "reckless," even though it is not specifically defined in the Ohio Revised Code. Id., 58 Ohio St.2d at 274, 12 O.O.3d 273, 389 N.E.2d 1128. And finally, the Ohio Revised Code defines "telecommunication device" as "any instrument, equipment, machine, or other device that facilitates telecommunication, including, but not limited to, a computer, computer network, computer chip, computer circuit, scanner, telephone, cellular telephone, pager, personal communications device, transponder, receiver, radio, modem, or device that enables the use of a modem." R.C. 2913.01(Y).

{¶ 27} In view of these specific definitions and common usage, the terms in R.C. 2907.07(E) would not confuse persons of ordinary intelligence. Accordingly, we do not agree with Turner that ordinary persons would fail to understand what conduct is prohibited. To the contrary, the statute clearly prohibits adults from using computers or computer networks to solicit minors of certain ages—or law enforcement personnel posing as such minors—for sexual activity.

{¶ 28} Furthermore, the fact that law enforcement personnel "pose" as minors does not prevent anyone from conforming his or her conduct to the requirements of the law. R.C. 2907.07(E)(2) does not require an offender to know that the person being solicited is a minor; instead, this subsection of the statute simply requires that "the offender believes that the other person is thirteen years of age or older but less than sixteen years of age or is reckless in that regard." To "believe" is "to hold an opinion, * * * to consider to be true or honest." *In re Osman* (1996), 109 Ohio App.3d 731, 736, 672 N.E.2d 1114, quoting from

Webster's Ninth New Collegiate Dictionary (1991) 142. Consequently, the impossible is not required, i.e., the offender is not required to "know" that the fictional party is a minor.

{¶ 29} In reality, the statute simply employs investigative techniques that have long been accepted in other criminal contexts. For example, law enforcement personnel have historically posed as prostitutes or drug-dealers, and have arrested the individuals who solicited the prostitutes or who attempted to buy or sell drugs. Moreover, even if R.C. 2907.07(E) had used the word "knows," rather than "believed," the statute also allows offenders to be charged with a violation if they are reckless. Again, persons of ordinary intelligence should have no difficulty understanding what it means to be reckless.

{¶ 30} Accordingly, because R.C. 2907.07(E)(2) allows persons of ordinary intelligence to understand what conduct is prohibited, and provides standards to prevent arbitrary or discriminatory enforcement, it is not void for vagueness.

{¶ 31} Turner also appears to raise the issue of interference with freedom of speech in the last paragraph of his first assignment of error. However, he does not elaborate on this argument. To the extent that an objection on overbreadth grounds is raised, it is also without merit.

{¶ 32} " '[A] clear and precise enactment may nevertheless be "overbroad" if in its reach * * * [it] prohibits constitutionally protected conduct.' " *Phipps* (1979), 58 Ohio St.2d 271, 273, 12 O.O.3d 273, 389 N.E.2d 1128. However, even speech protected by the First Amendment can be regulated, if the state has a compelling reason. Id. at 276, 12 O.O.3d 273, 389 N.E.2d 1128.

{¶ 33} In *State v. Snyder*, 155 Ohio App.3d 453, 2003-Ohio-6399, 801 N.E.2d 876, the Third District Court of Appeals considered the overbreadth question in detail in a case involving facts that are quite similar to those resulting in Turner's arrest. In *Snyder*, a police officer posing as a 14–year–old girl made contact over the Internet with a 36–year–old man. Id. at ¶ 2. After several conversations describing sexual activities that the man would like to engage in with the girl, a meeting was arranged. When the adult male appeared for the meeting, he was arrested and charged with importuning. Id. at ¶ 4.

{¶ 34} After considering the First Amendment challenge, the Third District found that the state has a compelling interest in protecting minors from unlawful solicitation of sexual activity by adults. Id. at ¶ 20. We agree. In addition, the Third District concluded that the importuning statute was narrowly tailored and did not have a chilling effect on speech. The court first reasoned that the offender "would have to believe that he is soliciting a minor for sexual activity, a criminal act, before his conduct would be regulated by" the statute. Id. at ¶ 28. The court then noted that any restrictions on speech were no greater than what

was necessary to achieve the state's interests. Id. at ¶ 29. Specifically, the statute did not restrict "speech about adults engaging in sexual conduct with minors" but prohibited "only speech which solicits minors to engage in illegal sexual activity with adults." Id.

{¶ 35} We agree with these observations, and likewise reject any First Amendment challenge, to the extent it has been made. Accordingly, the first assignment of error is without merit and is overruled.

## II

{¶ 36} In the second assignment of error, Turner claims that the statutes are unconstitutional as applied to the facts of this case. During oral argument, the panel raised the point that Turner's no contest plea (and consequent admission to the facts stated in the indictment) precluded an "as applied" challenge. Defense counsel responded by stating that some type of agreement was made in the trial court that would allow the factual circumstances of the case to be considered on appeal. We found no evidence of such an agreement in the record. However, even if such an agreement existed, we doubt its effectiveness. Specifically, a defendant is foreclosed from challenging the factual merits of the underlying charge when he pleads no contest to the indictment. *State v. Bird* (1998), 81 Ohio St.3d 582, 584, 692 N.E.2d 1013. Therefore, we believe that Turner is precluded from making an "as applied" challenge. Nonetheless, even if an "as applied" challenge were allowed, we would find it to be without merit.

{¶ 37} "An as-applied challenge contends that the law is unconstitutional 'as applied' to the litigant's particular speech activity, even though the law may be capable of valid application to others. * * * Contrary to a facial challenge, a successful 'as applied' challenge does not render the law itself invalid but only the particular application of the law." *Regal Cinemas, Inc. v. Mayfield Hts.* (2000), 137 Ohio App.3d 61, 72–73, 738 N.E.2d 42.

{¶ 38} The arguments raised in connection with this assignment of error primarily reiterate Turner's objection to a statute that lets police officers pose as minors, and also lets the police select the age of a victim who, in fact, does not exist. Turner further objects to the fact that his "thoughts, computer usage, and driving to a location * * * and compliance with every dictate of an officer" can be found criminal. In reality, however, this case involves precisely the situation R.C. 2907.07(E)(2) was designed to cover. There was nothing unique about this case except for the fact that the offender was a minister.

{¶ 39} Turner's final objection is that the indictment was defective. However, the indictment tracked the language of the statutes involved, which has been held sufficient. See, e.g., *State v. Landrum* (1990), 53 Ohio St.3d 107, 119, 559 N.E.2d

710 (indicating that Crim. R. 7[B] authorizes indictments to be in the words of applicable statutes), and *State v. Grimsley* (1998), 131 Ohio App.3d 44, 46–47, 721 N.E.2d 488. In this context, Turner contends that the indictment improperly listed independent clauses, making it impossible for him to know what allegations the state intended to rely on at trial. We recently rejected a similar claim in *State v. Skatzes*, Montgomery App. No. 18548, 2003-Ohio-516, 2003 WL 490549, at ¶ 54 (disjunctive allegations of purposes for kidnapping did not make indictment vague because the multiple purposes were not inconsistent).

{¶ 40} We also note that by pleading no contest, Turner admitted to the truth of the facts alleged in the indictment, even if they were stated alternatively. As a result, he cannot now contest these allegations.

{¶ 41} Based on the preceding discussion, the second assignment of error is without merit and is overruled.

## III

{¶ 42} The third assignment of error is based on Turner's claim that the conduct of the police constituted entrapment or unreasonable conduct as a matter of law, requiring per se dismissal of the charges. In this regard, Turner contends that he had an expectation of privacy once he and Duncan left the chat room and conversed "privately" via the Internet. According to Turner, the police were required, at that time, to obtain a warrant, presumably for some sort of wiretap.

{¶ 43} Taking the latter point first, we note that no court order was required because Detective Duncan was a party to the conversation. See *State v. Moller*, Greene App. No. 2001–CA–99, 2002-Ohio-1890, 2002 WL 628634, at ¶ 19–27 (wiretaps not required where police are parties to a conversation). In *Moller*, we also held that individuals have no reasonable expectation of privacy in statements they make to unknown individuals over the Internet. Id. at ¶ 31. We did comment that circumstances may exist, even over the Internet, where individuals may have an expectation of privacy. The examples we used were situations where someone is speaking with a known acquaintance, perhaps using a password or encryption, and where officers defeat the precautions and pose as the known acquaintance. Id. at ¶ 38. However, this is not such a case.

{¶ 44} Specifically, Duncan was not a known acquaintance, nor did he violate some type of password or encryption Turner used to maintain his privacy. Duncan did testify that when parties make contact in a chat room, a private box opens up so that they can have a conversation only with each other (instant messaging). However, that still did not give Turner an expectation of privacy, since he was chatting with a stranger, not a known acquaintance.

{¶ 45} As an analogy, if Turner called Duncan on a telephone line that the police had established to investigate gambling, Turner would have had no reasonable expectation of privacy concerning the conversation. This would be true even if only Turner and Duncan were parties to the call. In such a situation, Duncan would not be intruding into Turner's home or privacy, because Turner voluntarily chose to call a stranger, and also chose to speak with the stranger over the telephone about illegal matters. In the same vein, Turner chose to initiate conversations with a stranger over the Internet about potentially illegal matters.

{¶ 46} Entrapment is an affirmative defense that is "established where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute." *State v. Doran* (1983), 5 Ohio St.3d 187, 5 OBR 404, 449 N.E.2d 1295, at paragraphs one and two of the syllabus. It is "not established when government officials 'merely afford opportunities or facilities for the commission of the offense' and it is shown that the accused was predisposed to commit the offense." Id. at 192, 5 OBR 404, 449 N.E.2d 1295. See, also, *State v. West*, Greene App. No. 2002–CA–38, 2003-Ohio-215, 2003 WL 139976, at ¶ 10.

{¶ 47} The Ohio Supreme Court has indicated that by pleading no contest, a defendant waives the right to present an affirmative defense. *State ex rel. Stern v. Mascio* (1996), 75 Ohio St.3d 422, 424, 662 N.E.2d 370. Because Turner pled no contest to the charges, he waived the right to have the trial court rule on entrapment, and we cannot consider it on appeal. Again, even if we could review this claim, we would reject it, because there is simply no evidence that the police implanted any criminal design in Turner's mind. Accordingly, the third assignment of error is without merit and is overruled.

## IV

{¶ 48} In the fourth assignment of error, Turner contends that the charges could not be maintained because no corpus delecti existed, and any proposed necessary elements of the crime were supplied by the police, themselves. In this regard, Turner's first argument is that Count I is defective. We have already rejected that contention and will not address it further. However, Turner also argues that no minor actually existed and that no sexual activity occurred, other than "talk."

{¶ 49} We have doubt about Turner's ability to pursue these claims, due to the no contest plea. Nonetheless, even if we could consider these points, we have previously rejected similar claims. See *State v. Priest*, Greene App. No. 2001 CA

108, 2002-Ohio-1892, 2002 WL 628639, * 4; and *State v. Schaefer*, 155 Ohio App.3d 448, 2003-Ohio-6538, 801 N.E.2d 872, at ¶ 11–13 (under R.C. 2923.02[B], legal or factual impossibility of committing an offense is not a defense to a charge under the attempt statute, where the offense could have been committed if attendant circumstances were as the actor believed them to be).

{¶ 50} In light of the above discussion, the fourth assignment of error is without merit and is overruled.

V

{¶ 51} Turner's fifth assignment of error states that "[t]he statute violates Due Process by removing the affirmative defenses to which the Appellant would otherwise be entitled and allowing the State's arbitrary choice of a phantom age to discover the degree of the crime." In this regard, Turner contends that he was presumed guilty of the crime the moment police saw even the slightest indicia of the potential sexual activity. This, in turn, allegedly deprived Turner of his ability to abandon the criminal endeavor, and his ability to assert the affirmative defense of abandonment under R.C. 2923.02(D). However, we disagree. As we noted in *Schaefer*, driving to the place where the parties arranged to meet for illicit activity is a substantial step in the commission of the crime. 155 Ohio App.3d 448, 2003-Ohio-6538, 801 N.E.2d 872 at ¶ 14. Furthermore, if we were considering the facts here, we would note that (contrary to the claim in Turner's brief), Turner did page Duncan when he arrived in town, pursuant to their agreement. Again, this was a substantial step in the commission of the crime.

{¶ 52} We also find nothing inappropriate in the selection of the minor's age by the police. Both R.C. 2907.04 and 2907.07 prohibit adults from engaging in or attempting to solicit sexual activity with minors between the ages of 13 and 16. R.C. 2907.07(E)(2) also specifically authorizes law enforcement officers to pose as minors. Because the police had to choose some age that fit within the statutory parameters, their choice of one particular age rather than another, i.e., 14 rather than 13 or 15, is irrelevant. What we think the defendant really objects to is that the police are posing as minors at all. However, as we stressed earlier, the police have traditionally assumed alternate identities for purposes of investigating criminal activity. The risk any individual takes in choosing to violate the law is that the other party may, in fact, be a police officer.

{¶ 53} Based on the preceding discussion, the fifth assignment of error is without merit and is overruled.

## VI

{¶ 54} In the sixth assignment of error, Turner alleges that all evidence, including verbal statements, had to be suppressed. In this regard, Turner specifically claims that (1) Duncan's warrantless search became illegal when it went from protected activity in a general chat room to an individual inquiry; (2) pursuant to R.C. 2933.62 and 2933.63, the police were required to get a search warrant when Detective Duncan entered the Internet for purposes of obtaining evidence; and (3) suppression of statements, confessions, and search results was required due to the involuntariness of Turner's actions as a direct result of the behavior of the police.

{¶ 55} Because we have previously discussed and rejected the first two claims, we will not consider them further. This leaves only issues pertaining to suppression. After holding a hearing, the trial court overruled Turner's motion to suppress statements made to police, as well as consent Turner gave for a search of his home. The court found that the police had probable cause to arrest Turner and that Turner was adequately advised of his rights. In addition, the court noted that some statements were volunteered and that the consent to search was the product of Turner's own free will.

{¶ 56} " 'When we review suppression decisions, we do not evaluate credibility. Instead, we decide if the trial court properly applied the law.' * * * Therefore, we 'accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard.' " *State v. Cook*, 149 Ohio App.3d 422, 2002-Ohio-4812, 777 N.E.2d 882, at ¶ 9.

{¶ 57} We have reviewed the transcript of the suppression hearing, at which Detective Duncan was the only witness. Based on Duncan's testimony, we agree with the trial court that probable cause existed for the arrest and that the statements Duncan made to the police were volunteered or were given after appropriate *Miranda* warnings. In this regard, we note that contrary to the claim in Turner's brief, Duncan did testify that he gave verbal warnings at the scene, while Turner was being arrested. Duncan also read *Miranda* warnings to Turner at the police station. Turner then signed a form acknowledging receipt of the warnings. In addition, Turner signed a waiver of his rights and a consent-to-search form. The record shows no evidence of any kind of coercion. Instead, Detective Duncan appears to have been quite considerate. In fact, Duncan even agreed to conduct the search when Turner's wife would not be at home. Unfortunately, Mrs. Turner was unexpectedly seen leaving the driveway of the house when the police arrived for the search. As a result—and at Turner's own request—Duncan backed his car up and hid down the street until Mrs. Turner

left. The search was then carried out without the potential embarrassment, to Turner and his wife, of having Mrs. Turner present.

{¶ 58} The trial court properly applied the law, and its decision is supported by competent, credible evidence. Because the trial court did not err in overruling the motion for suppression of evidence, the sixth assignment of error is without merit and is overruled.

## VII

{¶ 59} The seventh assignment of error is based on the claim that "Counts I and II were multiple charges of the same crime since they involved the same conduct, same animus, and substantially the same elements (except for an adult police officer posing as a minor, who was also an adult police officer)." These counts of the indictment involve charges of attempting to engage in unlawful sexual conduct with a minor in violation of R.C. 2907.04(A) and (B)(3), and importuning, in violation of R.C. 2907.07(E)(2).

{¶ 60} If a defendant's actions " 'can be construed to constitute two or more allied offenses of *similar import*,' the defendant may be convicted (*i.e.*, found guilty and punished) of only one. * * * But if a defendant commits offenses of similar import separately or with a separate animus, he may be punished for both." (Emphasis in original.) *State v. Rance* (1999), 85 Ohio St.3d 632, 636, 710 N.E.2d 699. In *Rance*, the Ohio Supreme Court used the following test to decide this issue:

{¶ 61} "If the elements of the crimes ' "correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import." ' * * * If the elements do not so correspond, the offenses are of dissimilar import and the court's inquiry ends—the multiple convictions are permitted." Id.

{¶ 62} In *Schaefer*, we compared the elements of R.C. 2907.04(A) and 2907.07(E)(2). We found that attempted unlawful sexual conduct with a minor can be committed without also committing the offense of importuning, because an offender can attempt to engage in sexual conduct with a minor without involving or using a telecommunications device, or without the involvement of a law enforcement officer posing as a minor. 155 Ohio App.3d 448, 2003-Ohio-6538, 801 N.E.2d 872 at ¶ 26. As a result, we held that the trial court did not err in refusing to dismiss the charge of attempted unlawful sexual conduct on a lesser included offense/double jeopardy claim. Id. at ¶ 25–27. We reach the same conclusion here and find that Turner could be appropriately convicted and sentenced for attempting unlawful sexual conduct with a minor and for importun-

ing. For these reasons, the seventh assignment of error is without merit and is overruled.

## VIII

{¶ 63} The eighth assignment of error challenges the trial court's failure to consider Turner eligible for intervention in lieu of conviction ("ILC") under R.C. 2951.04. According to Turner, a chemical imbalance of dopamine was a substantial factor in the commission of the crime. Turner apparently recognizes that his condition is not included within the protection of the statute but feels that such an exclusion violates equal protection. In response, the state claims that Turner's failure to provide a transcript of the hearing on the motion for treatment precludes appellate review.

{¶ 64} The trial court set Turner's ILC motion for hearing on January 28, 2003, and also told Turner to contact the probation department to schedule an ILC interview and report. Although a hearing was apparently held on the scheduled date, the court did not issue a written decision on ILC. Instead, the court simply filed an order setting final pretrial and trial dates.

{¶ 65} Subsequently, Turner pled no contest to the charges. At the plea hearing, his counsel asked for the entire ILC file to be made part of the record. The court agreed to make the evidence part of the record to preserve Turner's rights on appeal. At the time, the court reporter had already delivered the report to the evidence room. Although the transcript has not been filed, the available record is adequate for purposes of appeal and Turner has sufficiently preserved this issue. Furthermore, while the trial court never formally denied the motion for ILC, we assume that this was the court's intent.

{¶ 66} Under R.C. 2951.041, offenders may be granted intervention in lieu of conviction where they meet certain requirements. Among the requirements is that the offender's "drug or alcohol usage was a factor leading to the criminal offense with which the offender is charged, intervention in lieu of conviction would not demean the seriousness of the offense, and intervention would substantially reduce the likelihood of any future criminal activity." R.C. 2951.041(B)(6).

{¶ 67} "In enacting R.C. 2951.041, the legislature made a determination that when chemical abuse is the cause or at least a precipitating factor in the commission of a crime, it may be more beneficial to the individual and the community as a whole to treat the cause rather than punish the crime." *State v. Shoaf* (2000), 140 Ohio App.3d 75, 77, 746 N.E.2d 674. If the trial court has reason to believe that an "offender is a drug dependent person or is in danger of becoming a drug dependent person," the court may stay all criminal proceedings and order the offender to a period of rehabilitation. Id. We then review the trial

court's ruling for abuse of discretion, meaning that we must uphold the decision unless it was "unreasonable, arbitrary, or unconscionable." *State v. Schmidt*, 149 Ohio App.3d 89, 2002-Ohio-3923, 776 N.E.2d 113, at ¶ 5–6.

{¶ 68} In the present case, Turner does not fall within the statute because drug or alcohol use was not a factor in the criminal offense. In fact, Turner made it clear to the adult probation officer evaluating ILC that "his sexual addiction was not driven by drugs and alcohol." See ILC report, at 3. We have held that a trial court acts arbitrarily when it denies intervention solely because an alcohol problem, for example, is "not serious enough." *State v. Fullenkamp* (Oct. 26, 2001), Darke App. No. 2001 CA 1543, 2001 WL 1295372, at * 2. By the same token, drug or alcohol abuse "must be a factor leading to the offender's criminal behavior." Id. Where it is not a factor, ILC cannot be ordered.

{¶ 69} As we indicated, Turner argues that a chemical imbalance of dopamine was a substantial factor in the crime, and that excluding such situations from the benefit of R.C. 2951.041 violates equal protection. However, we disagree.

{¶ 70} In the first place, the record before us does not indicate that a chemical imbalance of dopamine had anything to do with the crime. More important, however, the legislature has chosen to treat drug and alcohol dependency differently from other types of medical or psychological situations. We cannot say that the legislature's choice was unreasonable.

{¶ 71} We have previously considered equal protection challenges to the statute. In *State v. Palmer* (Jan 26, 1981), Montgomery App. No. 6830, 1981 WL 5313, we considered whether the legislature's choice bore " 'a reasonable relation-ship to a permissible governmental objective,' " where the legislature treated drug addicts accused of crime differently from the way it treated drug addicts who were also drug dealers. 1981 WL 5313, at * 2. We held that this classifica-tion was reasonable, even if a drug dealer was drug dependent or was in danger of becoming drug dependent. Id. In particular, we noted that before the legislation was effective on July 1, 1976:

{¶ 72} "[I]t was immaterial whether a person accused of crime was a drug addict or in danger of becoming one. Such a person was treated in the same manner as any other person so accused. The General Assembly deemed it in the state's best interests that such a person receive a different kind of rehabilitation from that he or she would have received if an ordinary criminal. The General Assembly of Ohio did not have to pass this statute: it did so for humanitarian reasons only. Since there was no outside mandate requiring this legislation, the General Assembly had the right to decide what type of persons would receive its benefits." Id.

{¶ 73} We reiterated this point in *State v. Winterbotham* (Feb. 4, 2000), Montgomery App. No. 17916, 2000 WL 125971, when we rejected a defendant's attempt to include gambling addiction as a matter subject to ILC. We noted that "[g]ambling is not mentioned specifically in the statute, nor is there any room for expanding the statute to include any other type of addiction." 2000 WL 125971, at * 2. We also stressed that the legislature is in the best position to address such issues. Id. Accordingly, even if the record had substantiated the claim that dopamine was a substantial factor in the commission of Turner's offense, such medications are not included in the statute. We cannot expand R.C. 2951.041 to include matters that the legislature has not prescribed.

{¶ 74} Accordingly, the eighth assignment of error is without merit and is overruled.

IX

{¶ 75} In the ninth assignment of error, Turner alleges that "the mere possession of a computer, even one that is used to 'talk dirty on' is not within the purview of R.C. 2923.24(A)." Turner further claims that "merely driving a car is not grounds to forfeit the car as a criminal tool under the forfeiture provisions of R.C. 2933.41 et seq."

{¶ 76} We find no merit to the first part of this assignment of error. As we indicated earlier, Turner's no contest plea precludes an attack on the facts underlying Count III, which alleged that Turner violated R.C. 2923.24(A) by possessing a computer and computer accessories with the intent to use them criminally. *Bird*, 81 Ohio St.3d at 584, 692 N.E.2d 1013. However, even if we could consider the argument, we would find it without merit.

{¶ 77} Under R.C. 2923.24(A), "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." In the context of the present case, using a computer was integral to commission of the offenses in Counts I and II, and the computer was properly classified as a criminal tool. Compare *State v. Haberek* (1988), 47 Ohio App.3d 35, 45, 546 N.E.2d 1361 (use of computer was contemplated in theft offense, making computer a criminal tool, where it was the sole means by which confidential information could be obtained in violation of the law); *State v. Anderson*, 146 Ohio App.3d 427, 2001-Ohio-4297, 766 N.E.2d 1005, at ¶ 43 (affirming more than a minimum sentence for possession of criminal tools, where the defendant used a computer to download over 600 images of children in sexually explicit poses); and *State v. Harlan* (1995), 105 Ohio App.3d 756, 759, 664 N.E.2d 1358 (possession of handcuffs is not criminal; possession becomes

criminal only when coupled with a purpose to use the device to commit some other crime).

{¶ 78} The second part of the argument that Turner makes, i.e., concerning the potential forfeiture of his automobile, involves a matter that is not properly before us. According to the state, a civil action was instituted for forfeiture of the car Turner drove at the time of his arrest, and the action was later dismissed. However, even if that case were still pending, the proper place to raise claims about the car would be in the civil action. Because this is not the proper forum, the ninth assignment of error is without merit and is overruled.

{¶ 79} Based on the preceding discussion, all nine assignments of error are overruled and the judgment of the trial court is affirmed.

Judgment affirmed.

WOLFF and GRADY, JJ., concur.