OPINION
{¶ 1} Defendant, Kurt Burg, appeals from his convictions and sentences for attempted unlawful sexual conduct with a minor and importuning.
 {¶ 2} On January 20, 2004, Detective Barlow of the Xenia police department entered an Internet chat room posing as a fourteen year old girl named Beth. Defendant soon made contact with "Beth" and immediately asked if she was looking for a "sex buddy." Defendant told Beth that is what he wanted, and he inquired if Beth would be interested. He initiated a conversation with Beth about sexual activity. Defendant expressed his desire to teach Beth many things about sex, and he described in graphic detail the kinds of sexual activity he wanted to engage in with Beth.
 {¶ 3} In a subsequent conversation Defendant had with Beth over the internet on January 25, 2004, Defendant suggested they arrange to meet in person, which was agreed. Defendant again described the sexual activity he wanted to participate in with Beth. Defendant also indicated that he was not concerned that Beth was only fourteen years old, "as long as she didn't tell anyone because he could get arrested."
 {¶ 4} The next day, January 26, 2004, when Defendant appeared in Xenia at the prearranged location to meet Beth he was arrested by Xenia police. Inside Defendant's vehicle police found a paper with Beth's name and pager number on it and directions to a Taco Bell restaurant in Xenia, which was the prearranged meeting location. Police also recovered a packet of condoms from Defendant's pocket.
 {¶ 5} Defendant was indicted on one count of attempted unlawful sexual conduct with a minor in violation of R.C. 2923.02(A) and 2907.04(A), and one count of importuning, R.C. 2907.07(D)(2). Prior to trial Defendant filed a motion to dismiss the charges, claiming that they were unconstitutionally overbroad because they interfered with his rights to free speech protected by the First Amendment. The trial court orally overruled Defendant's motion to dismiss during the trial.
 {¶ 6} Defendant was found guilty following a jury trial of both charges. The trial court sentenced Defendant to five years of community control, which included up to six months in the county jail and sexual offender treatment. The court also designated Defendant a sexually-oriented offender. Defendant timely appealed to this court from his conviction and sentence.
 {¶ 7} First Assignment of error
 {¶ 8} "The trial court erred by refusing to dismiss the charges against appellant as requested on motion, at the close of the state's case, and at the close of the trial, because the charges as constituted violate this defendant's right to freedom of speech as guaranteed to him through the first amendment of the constitution of the united states."
 {¶ 9} Defendant argues that the trial court erred in failing to dismiss the charges against him because the importuning statute, formerly R.C. 2907.07(E)(2), now 2907.07(D)(2), is unconstitutionally overbroad in that it restricts his right to freedom of speech protected by the First
Amendment. We have previously considered and rejected this same argument. See: State v. Turner, 156 Ohio App.3d 177, 2004-Ohio-464, quoting State v. Snyder, 155 Ohio App.3d 453, 2003-Ohio-6399.
 {¶ 10} In Turner this court agreed with and adopted the conclusions of the Third District Court of Appeals in State v. Snyder which considered the overbreadth/First Amendment challenge to the importuning statute in detail. We stated:
{¶ 11} "{ ¶ 33} In State v. Snyder, 155 Ohio App.3d 453,2003-Ohio-6399, 801 N.E.2d 876, the Third District Court of Appeals considered the overbreadth question in detail in a case involving facts that are quite similar to those resulting in Turner's arrest. In Snyder,
a police officer posing as a 14-year-old girl made contact over the Internet with a 36-year-old man. Id. at ¶ 2. After several conversations describing sexual activities that the man would like to engage in with the girl, a meeting was arranged. When the adult male appeared for the meeting, he was arrested and charged with importuning. Id. at ¶ 4.
{¶ 12} "{¶ 34} After considering the First Amendment challenge, the Third District found that the state has a compelling interest in protecting minors from unlawful solicitation of sexual activity by adults. Id. at ¶ 20. We agree. In addition, the Third District concluded that the importuning statute was narrowly tailored and did not have a chilling effect on speech. The court first reasoned that the offender `would have to believe that he is soliciting a minor for sexual activity, a criminal act, before his conduct would be regulated by' the statute. Id. at ¶ 28. The court then noted that any restrictions on speech were no greater than what was necessary to achieve the state's interests. Id. at ¶ 29. Specifically, the statute did not restrict `speech about adults engaging in sexual conduct with minors' but prohibited `only speech which solicits minors to engage in illegal sexual activity with adults.' Id.
 {¶ 13} "{¶ 35} We agree with these observations, and likewise reject any First Amendment challenge, to the extent it has been made." Id., at 185-186.
 {¶ 14} Defendant relies on Ashcroft v. Free Speech Coalition (2002),535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403, which struck down application of a Federal anti-child pornography statute to computer-generated "virtual" child pornography, finding that its application was remote from the evils involving children the statute purported to prohibit and that, otherwise, it involved mere thought and prohibited pure speech. That is not the case here. Defendant's conviction involves conduct, not mere thought. Further, the constraints imposed on his conduct are more directly related to the actual protection of real children from practices of this kind. Therefore, Defendant's First
Amendment rights are not violated, for the reasons cited in Snyder, even though a form of speech is involved.
 {¶ 15} Based upon the authority and reasoning set forth in Snyder, we reject Defendant's claim that R.C. 2907.07(D)(2) is overbroad and infringes upon his freedom of speech in violation of the First
Amendment. The solicitation by an adult of sexual activity from a person whom the adult believes is a minor child as proscribed by R.C.2907.07(D)(2) is not speech protected by the First Amendment. The trial court did not err in overruling Defendant's motion to dismiss the charges.
 {¶ 16} The first assignment of error is overruled.
 {¶ 17} Second Assignment of error
 {¶ 18} "The trial court erred to the substantial prejudice of defendant in refusing to give the requested jury instruction on entrapment."
 {¶ 19} It is prejudicial error to refuse to give a requested jury instruction which is pertinent to the case, states the law correctly, and is not covered by the general charge. State v. Scott (1986),26 Ohio St.3d 92, 497 N.E.2d 55. A criminal defendant is entitled to have the trial court give complete and accurate jury instructions on all of the issues raised by the evidence. State v. Williford (1990),49 Ohio St.3d 247, 551 N.E.2d 1279. It is not incumbent upon the trial court, however, to give the defendant's requested instructions verbatim; the trial court may use its own language to communicate the same legal principles. State v. Sneed (1992), 63 Ohio St.3d 3, 584 N.E.2d 1160. A trial court does not abuse its discretion in failing to give a defendant's proposed jury instructions when the substance of those requested instructions is included in the court's general charge to the jury. Id.
 {¶ 20} A trial court's refusal to give requested jury instructions is reviewed on appeal using an abuse of discretion standard. State v.Elijah (July 14, 2000), Montgomery App. No. 18034, unreported. An abuse of discretion connotes more than simply an error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. State v. Adams (1980), 62 Ohio St.2d 151,404 N.E.2d 144.
 {¶ 21} Entrapment is an affirmative defense that is established where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute.State v. Doran (1983), 5 Ohio St.3d 187. It is not established when government officials merely afford opportunities or facilities for the commission of the offense and it is shown that the accused was predisposed to commit the offense. Id.; Sherman v. United States (1958),356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848; Turner, supra.
 {¶ 22} For the entrapment defense to apply, police officers must plant in the mind of the defendant the original idea or purpose, thus furnishing from the start the incentive or motivation to commit an offense that the defendant had not considered, and which he would not have carried out except for that incentive. Snyder, supra, quoting Statev. Laney (1991), 61 Ohio Misc. 2d 688, 694. The law permits a police officer to go as far as to suggest an offense and provide the opportunity for the defendant to commit the offense. If the defendant is already disposed to commit the offense and acts pursuant to a criminal idea or purpose of his own, then there is no entrapment. Laney, supra.
 {¶ 23} The evidence, particularly the chat logs between Defendant and Beth, amply demonstrates that the police did not implant in the mind of Defendant the original idea or purpose of engaging in sexual activity with a fourteen year old female, furnishing from the start the incentive to commit these offenses that the defendant had not considered. To the contrary, it was Defendant who initiated the contact with Beth and immediately asked her if she was looking for a "sex buddy." Defendant stated that is what he wanted, inquired if Beth would be interested, and initiated a conversation with Beth about sexual activity, expressing his desire to teach Beth many things about sex and describing in graphic detail the sexual activity he wanted to engage in with Beth. Defendant also indicated that he was not concerned about the fact that Beth was only fourteen years of age, "as long as she didn't tell anyone because he could get arrested." Defendant also initiated the conversation about making plans to meet in person.
 {¶ 24} The record before us clearly demonstrates that Defendant was predisposed to commit these offenses, when police afforded him the opportunity to do so. Under these circumstances, there is no entrapment. The trial court did not abuse its discretion in refusing to give Defendant's requested instruction on entrapment because the evidence did not warrant such an instruction.
 {¶ 25} The second assignment of error is overruled.
 {¶ 26} Third assignment of error
 {¶ 27} "The trial was fatally flawed because the prosecutor improperly cross-examined appellant on his exercise of his constitutional right to remain silent."
 {¶ 28} Defendant argues that his rights to due process and a fair trial were violated when the prosecutor cross-examined him regarding his failure to tell police during custodial interrogation that he had decided to abandon his plan to meet Beth and was going to leave Xenia when police arrived and arrested him, to which Defendant testified about at trial. According to Defendant, this line of questioning which the State used to impeach his trial testimony was an improper use of his assertion of hisFifth Amendment right to remain silent.
 {¶ 29} On direct examination Defendant testified that he had decided to abandon his plan to meet Beth and had gotten into his truck intending to leave Xenia just prior to police arriving on the scene and arresting him. During cross-examination the following exchange occurred between the prosecutor and Defendant:
 {¶ 30} "Q. You're asking this Jury to believe that after you drove 50 some miles in that weather, and after you called Beth and told her you were here, you want this Jury to believe that right before you got arrested you made a decision that you were going to leave, is that way you're asking them to believe?
 {¶ 31} "A. That is the truth. I turned my car on and I was ready to pull out when I was blocked in.
 {¶ 32} "Q. Okay. You never told the Detective that, did you?
 {¶ 33} "A. I didn't tell him anything. I wanted to talk to a lawyer.
 {¶ 34} "Q. Okay. Well, no, you waived your right to a lawyer, didn't you? Didn't you?
 {¶ 35} "A. I — I asked him when I could talk to a lawyer and he said we'll get to that and then proceeded to do all the other paperwork.
 {¶ 36} "Q. All right. During the course of the interview, the Officer, Detective Barlow, asked you on more than one occasion tell me what was going on here, tell me what happened here, correct? He said that he had read these chat logs, wanted to know what was on your mind — and I'm paraphrasing, you saw the videotape, you were there — he invited you to comment on what is going on here, he wants to know what is happening, right?
 {¶ 37} "A. Yeah.
 {¶ 38} "Q. And you — why didn't you say hey, Detective, this is a big mistake, I was role playing, I didn't come up here to have sex with some 14 year old girl, I was just role playing.
 {¶ 39} "A. I didn't tell him anything until I got to talk to a lawyer.
 {¶ 40} "Q. But you waived your rights and indicated you would talk to —
 {¶ 41} "A. No, I signed a paper for a public defender.
 {¶ 42} "Q. You signed a waiver of your rights and indicated you wanted to talk to him.
 {¶ 43} "A. No, I signed a paper for a public defender.
 {¶ 44} (State's Exhibit Number 18 was marked for identification at this time.)
 {¶ 45} By Mr. Gall:
 {¶ 46} "Q. Mr. Burg, I'm going to hand you what has been marked State's Exhibit 18 and ask you to take a look at that. After you've had a chance to take a look at that, let me know, please. Do you recognize the document?
 {¶ 47} "A. Yes.
 {¶ 48} "Q. Okay. You recall initialing and signing the document?
 {¶ 49} "A. Yes.
 {¶ 50} "Q. Okay. Do you see anything in there about signing about a public defender? Do you see the words public defender on there?
 {¶ 51} "A. Yeah.
 {¶ 52} "Q. Show me where you're looking. Okay. It says that you could be provided a public defender, correct?
 {¶ 53} "A. Yes.
 {¶ 54} "Q. And do you recall talking to Detective Barlow and him explaining the public defender system; that you wouldn't have somebody that day but that would be further down the road?
 {¶ 55} "A. I don't really recall.
 {¶ 56} "Q. Okay. Let me go back to my point. You spent what 20 minutes, 25 minutes with Detective Barlow, at least.
 {¶ 57} "A. Yeah.
 {¶ 58} "Q. All right. And he invited you to tell him what is going on and you had every opportunity if you wanted to say, hey, I —
 {¶ 59} "MR. NAPIER: Objection.
 {¶ 60} "THE COURT: Basis?
 {¶ 61} "MR. NAPIER: Can we approach, Your Honor.
 {¶ 62} "THE COURT: All right." (T. 206-209).
 {¶ 63} Defense counsel objected that the prosecutor's line of questioning was an improper comment on and use of Defendant's assertion of his right to remain silent, whereupon the prosecutor stated: "I'll move on to a different line of questioning."
 {¶ 64} In State v. Morgan (February 6, 2004), Montgomery App. No. 19416, 2004-Ohio-461, this court wrote: "It is well-established that the use for purposes of impeachment of an accused's silence at the time of arrest and after receiving Miranda warnings violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.Doyle v. Ohio, 426 U.S. 610, 619, 96 S.Ct. 2240, 49 L.Ed.2d 91. However, where a defendant chooses not to exercise his right to silence, he has not relied upon the Miranda warnings and the promise that his silence cannot be used against him. State v. Osborne (1977), 50 Ohio St.2d 211, 4 O.O.3d 406, 364 N.E.2d 216; State v. Gillard (1988), 40 Ohio St.3d 226,533 N.E.2d 272. `If a defendant voluntarily offers information to police, his toying with the authorities by allegedly telling only part of his story is certainly not protected by Miranda or Doyle." Osborne,50 Ohio St.2d at 216, 364 N.E.2d 216.'" Id., at ¶ 21.
 {¶ 65} If the record before us demonstrated, as Defendant claims, that he invoked his right to remain silent and refused to speak to police until he talked with a lawyer, we would find that the prosecutor's questioning to which Defendant objects violated the rule of Doyle v.Ohio, supra, and Defendant's due process rights. That is not the case, however. We have reviewed the videotape of Detective Barlow's interview with Defendant. Detective Barlow explained Defendant's constitutional rights to him and Defendant indicated that he understood each of those rights. Defendant did not, however exercise his right to remain silent. Instead, Defendant executed a written waiver of his rights and made statements to Detective Barlow.
 {¶ 66} While Defendant did ask some questions relative to his right to counsel, such as what do I do if I don't have a lawyer, and when do I get a lawyer if I want one and one is appointed for me, Defendant never asked to speak with a lawyer before or during this questioning, nor did he ask that the questioning cease or otherwise indicate that he didn't want to answer questions. Moreover, while Defendant didn't give a full confession admitting that he came to Xenia for the purpose of engaging in sexual activity with fourteen year old Beth whom he had talked to over the internet, he did nevertheless make statements to Detective Barlow that were incriminating. Defendant admitted that he was the Kurt Burg who talked to Beth over the internet, but he claimed he didn't mean anything. Defendant also acknowledged having condoms in his pocket. Defendant stated that he'll never go into a chat room again, and that he was sorry for all of this and would never get on a computer again.
 {¶ 67} We are satisfied that this record amply demonstrates that Defendant did not assert during police interrogation either his right to remain silent or his right to counsel. Instead, he voluntarily chose to talk to Detective Barlow and he made incriminating statements about his conduct in this case. Under those circumstances, the State could properly question Defendant at trial about inconsistencies in his account of what transpired and his failure to provide a full and complete statement to police at the time of his interrogation. Such questioning does not violate the rule of Doyle v. Ohio, supra, and constitute an improper use of Defendant's post-arrest, post Miranda warnings silence. Morgan, supra;Osborne, supra; Gillard, supra.
 {¶ 68} The third assignment of error is overruled.
 {¶ 69} Fourth Assignment of error
 {¶ 70} "The trial was fatally flawed due to repeated and flagrant prosecutional misconduct."
 {¶ 71} The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. State v. Bey, 85 Ohio St.3d 487, 493, 1999-Ohio-283. The focus of that inquiry is on the fairness of the trial, not the culpability of the prosecutor. Id.
 {¶ 72} Generally, prosecutors are entitled to considerable latitude in opening and closing arguments. Maggio v. Cleveland (1949), 151 Ohio St. 136;State v. Ballew, 76 Ohio St.3d 244, 1996-Ohio-81. A prosecutor may freely comment in closing argument on what the evidence has shown and what reasonable inferences the prosecutor believes may be drawn therefrom.State v. Lott (1990), 51 Ohio St.3d 160, 165. In determining whether the prosecutor's remarks were prejudicial, the State's argument must be viewed in its entirety. Ballew, supra.
 {¶ 73} Defendant alleges five instances of prosecutorial misconduct. First, he complains about the prosecutor referring to defense counsel as the "spin doctor" during rebuttal closing argument. A review of the State's argument in its entirety, however, readily reveals that the prosecutor's comment was not a personal attack upon defense counsel, but rather an attack upon defense counsel's interpretation of the evidence. That is not improper because each party is entitled to comment upon what the evidence has shown and the reasonable inferences that may be drawn therefrom. Lott, supra. In essence, the prosecutor was simply responding to defense counsel's view of the evidence, commenting that defense counsel's characterization of Defendant as the real victim in this case, an outcast who suffers from social phobia and is undergoing counseling because he has difficulty interacting and communicating with people, is not an accurate interpretation of the evidence presented at trial. The prosecutor's remark was not improper.
 {¶ 74} Next, Defendant argues that the prosecutor engaged in misconduct and made improper use of his assertion of his constitutional rights when, in an effort to impeach Defendant's trial testimony, the prosecutor questioned Defendant on cross-examination about why he failed to tell police the same story he told at trial, that he had decided to abandon his plan to meet Beth and had gotten into his truck intending to leave Xenia when police pulled up and arrested him, even though Defendant testified he had refused to speak with police until he talked with a lawyer. As we concluded in the previous assignment of error, Defendant made voluntary statements to the police and did not assert either his right to remain silent or his right to counsel during police interrogation. Therefore, the prosecutor's questioning of Defendant regarding why he didn't tell police the same story he told the jury at trial did not constitute an improper use for impeachment purposes of Defendant's post-arrest, post-Miranda warnings silence that violated the rule of Doyle v. Ohio, supra. See: State v. Morgan, supra. The prosecutor's questions were not improper.
 {¶ 75} Defendant next complains that the prosecutor engaged in misconduct and improperly argued evidence that is not in the record when he commented repeatedly during rebuttal closing argument that no counselors had testified at trial regarding Defendant's social phobia. Defendant introduced the subject of social phobia during his redirect examination. During closing argument defense counsel repeatedly made reference to Defendant's social phobia, implying that this condition for which Defendant is receiving counseling somehow made it unlikely that Defendant could commit these offenses and mitigates his conduct in this case. Defense counsel may also have been attempting to appeal to the jury's emotion and sympathy. In response, the prosecutor made the complained about remarks which are proper comments on the fact that no evidence was presented to support Defendant's claim that he has social phobia. The remarks were not improper.
 {¶ 76} Defendant next complains that the prosecutor engaged in misconduct by his repeated attempts to sanctify the Xenia police internet crimes unit as being there to protect children. According to Defendant, this was an attempt to appeal to the jury's emotions and passion. However, Defendant has failed to identify where in the record this alleged error occurred. See App.R. 12(A)(2). Therefore, the record does not exemplify or demonstrate this claimed error.
 {¶ 77} Finally, Defendant argues that the prosecutor's attempt to admit photographs of Detective Holly Hyer when she was age thirteen, which were sent to Defendant over the internet in response to his request for pictures of Beth, constituted misconduct because the photographs were hearsay. The trial court admitted this evidence at trial without objection from Defendant, which waives the error in any event, but we find none.
 {¶ 78} Had the photograph been offered in order to show that it depicted Hyer but without the foundational evidence that purpose requires, it might be hearsay. However, it was offered only to show what photo of the fictional "Beth" had been sent to Defendant, and was identified as such, a purpose which involves no declaration concerning whom the photo actually depicts. Therefore, the photo was not hearsay, but hearsay evidence necessarily involves an out-of-court statement or declaration of some kind. See Evid.R. 801. That it was also identified as depicting Hyer is immaterial to the Defendant's guilt or innocence, and any error in so doing is therefore harmless.
 {¶ 79} On this record prosecutorial misconduct has not been demonstrated. The fourth assignment of error is overruled. The judgment of the trial court will be affirmed.
Wolff, J. and Fain, J., concur.