OPINION
{¶ 1} Nicole L. Wallen was convicted by a jury in the Montgomery County Court of Common Pleas of trafficking in cocaine, in violation of R.C. 2925.03(A)(1). She was acquitted by the jury of two counts of trafficking in marijuana. Wallen was sentenced to a mandatory one year term of imprisonment and suspension of her driver's license for six months. Wallen appeals from her conviction.
 {¶ 2} The state's evidence revealed the following facts.
 {¶ 3} Wallen, a mother of four small children, began to work as a dancer at Sharkey's Lounge, located on North Dixie Drive in Harrison Township, in June or July, 2003. Her husband was unemployed, and she had heard from a friend of her sister-in-law that she could earn more money at Sharkey's. Wallen worked Wednesdays through Saturdays, earning between $300 and $500 per week. She was not paid by Sharkey's but, rather, earned money from tips provided by patrons. Wallen was required to pay Sharkey's a $20 "house fee" each night that she worked. When Wallen began working at Sharkey's, she had no prior criminal record.
 {¶ 4} In June 2003, Herbert Pugh, an undercover agent of the Ohio Department of Public Safety Investigative Unit, was contacted by an assistant agent in charge of the Combined Area Narcotics Enforcement (CANE) Drug Task Force regarding an investigation of Sharkey's Lounge. The Task Force had received complaints of narcotics and prostitution at the club. In October 2003, Pugh visited Sharkey's to see if anyone knew him and to begin observations of what was occurring at the establishment. Pugh used the undercover name "Doc" and the cover story that he was a drug dealer from South Carolina who was involved in cocaine and marijuana. Due to an injury, Pugh temporary stopped visiting Sharkey's after Halloween.
 {¶ 5} In late November or early December 2003, Detective Jim Kelly, who was assigned to the CANE Task Force by the Montgomery County Sheriff's Department, began to frequent Sharkey's as part of the on-going investigation. Kelly worked undercover as "Mickey," a man who lived in Cincinnati who would loan money to businesses when the owners got into financial trouble.
 {¶ 6} On February 3, 2004, Pugh and Kelly began visiting Sharkey's together. Two days later, Kelly spoke with Wallen about purchasing some marijuana. According to Kelly, Wallen stated that "she had some weed, meaning marijuana, that she needed to move, sell." Kelly indicated that he and Pugh would be interested in 2 quarter-ounce bags; Wallen stated the price was $60 per bag. Kelly accepted the price, and they agreed that Kelly and Pugh would pick up the marijuana on the following day. On February 6, 2004, Kelly and Pugh returned to Sharkey's and purchased two baggies of marijuana from Wallen; they paid separately.
 {¶ 7} In March 2004, Wallen talked to Kelly about purchasing an "eight ball," i.e. an eighth of an ounce of cocaine. According to Kelly, that deal "did not go through."
 {¶ 8} On April 5, 2004, Wallen told Pugh that her home had been raided by the FBI and the Parole Authority, who were looking for Gene Edwards, a friend of her "brother" (a biological cousin) who was staying at her home. Wallen indicated that she had found two ounces of cocaine and three pounds of marijuana which had been left by Edwards at her home. On April 7, Pugh returned to Sharkey's and asked Wallen "if she would like to get rid of" the cocaine. They spoke for approximately thirty minutes, and Wallen agreed to sell one-half ounce of cocaine to Pugh for $300. Wallen agreed to sell the cocaine because her rent was due soon. Pugh bought the cocaine on April 8, 2004. On April 13, 2004, Pugh asked Wallen "if she had any more product" and they made an arrangement for Pugh to buy the one and one-half ounces of cocaine that she had left for $900. Pugh ultimately did not buy the cocaine, because Wallen no longer had it. On April 23, 2004, law enforcement officers raided Sharkey's and arrested numerous individuals, including Wallen.
 {¶ 9} On April 29, 2004, Wallen was indicted for two counts of trafficking in marijuana and one count of trafficking in cocaine, in violation of R.C. 2925.03(A)(1). A jury trial was held on October 7 and 8, 2004, during which Wallen asserted that she had been entrapped by Pugh and Kelly. Wallen denied that she had marijuana in February 2004 and that she had offered to sell it to Kelly. She testified that Kelly had asked her if she could get marijuana and that she had obtained marijuana for him from her brother only because Kelly approached her. Wallen denied that she offered to sell an "eight ball" to Kelly and Pugh in March 2004. She further testified that, when approached by Pugh on April 7, 2004, she had agreed to sell him cocaine "because I knew that my rent was coming up." Wallen was acquitted of both counts of trafficking in marijuana but convicted of trafficking in cocaine. She was sentenced accordingly.
 {¶ 10} Wallen raises two assignments of error on appeal.
 {¶ 11} I. "THE TRIAL JUDGE ERRED IN INSTRUCTING THE JURY THAT THE TWO INCIDENTS HAD TO BE CONSIDERED AS SEPARATE OFFENSES."
 {¶ 12} In her first assignment of error, Wallen asserts that the trial court committed plain error when it instructed the jury that it had to consider the three counts in the indictment separately. She argues that there was a "logical nexus" between the three counts in the indictment, and that "[i]t should have been left to the province of the jury to decide whether there existed enough evidence to suggest that Ms. Wallen, at the time of the second offense [trafficking in cocaine], was still under the same fraudulent police influence that led to the first offense."
 {¶ 13} We find no fault with the trial court's instruction. It is well-established that "each count of an indictment charges a complete offense; that the separate counts of an indictment are not interdependent, but are, and necessarily must be, each complete in itself." Browning v. State (1929), 120 Ohio St. 62, 71, 165 N.E. 566;State v. Lovejoy (1997), 79 Ohio St.3d 440, 683 N.E.2d 1112. Thus, the court did not err when it emphasized that both counts of trafficking in marijuana and the one count of trafficking in cocaine "are separate and distinct offenses, and [the jury] must consider and decide each case and each count separately." Moreover, the trial court's instruction in no way precluded the jury from considering whether Wallen had been entrapped in April 2004.
 {¶ 14} The first assignment of error is overruled.
 {¶ 15} II. "THE JURY TRIAL RESULTED IN AN INCONSISTENT VERDICT THAT MERITS REVERSAL."
 {¶ 16} In her second assignment of error, Wallen claims that the jury's verdict on the charge of trafficking in cocaine should be reversed as inconsistent with the "overall verdict." She argues that "[i]t is simply inconsistent that Ms. Wallen could be found entrapped on February 6, 2004, i.e. the prey of manipulative State action, and yet not deserve the same consideration 62 days later."
 {¶ 17} As an initial matter, we disagree with Wallen that the jury's apparently finding that Wallen had been entrapped on February 6, 2004, when she sold marijuana to Pugh and Kelly, but that she had not been entrapped on April 6, 2004, when she sold cocaine to Pugh, are necessarily inconsistent.
 {¶ 18} "Entrapment is an affirmative defense that is established where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute.State v. Doran (1983), 5 Ohio St.3d 187. It is not established when government officials merely afford opportunities or facilities for the commission of the offense and it is shown that the accused was predisposed to commit the offense. Id.; Sherman v. United States (1958),356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848; Turner, supra.
 {¶ 19} "For the entrapment defense to apply, police officers must plant in the mind of the defendant the original idea or purpose, thus furnishing from the start the incentive or motivation to commit an offense that the defendant had not considered, and which he would not have carried out except for that incentive. Snyder, supra, quoting Statev. Laney (1991), 61 Ohio Misc.2d 688, 694. The law permits a police officer to go as far as to suggest an offense and provide the opportunity for the defendant to commit the offense. If the defendant is already disposed to commit the offense and acts pursuant to a criminal idea or purpose of his own, then there is no entrapment. Laney, supra." State v.Burg, Greene App. No. 04CA94, 2005-Ohio-3666, ¶ 21-22.
 {¶ 20} In the present case, Wallen testified that Kelly approached her on February 5, 2004, and asked her if she could get some marijuana. Wallen stated that she had never sold drugs before and it was undisputed that Wallen had no prior criminal record. Wallen testified that she did not have marijuana, but was able to get some for Kelly from her brother. The jury apparently believed Wallen's testimony and concluded that Kelly had planted the idea to sell marijuana in Wallen's mind and had induced her to do so.
 {¶ 21} In contrast to the events in February 2004, at the time that Pugh spoke with Wallen about purchasing cocaine, Wallen had told Pugh that she had cocaine in her possession. Moreover, although Wallen testified that she did not tell any of her co-workers about the cocaine, she stated that she told Pugh, an individual who she believed was a drug dealer from South Carolina. In addition, Wallen testified that she sold the cocaine to Pugh "because I knew that my rent was coming up." Although Pugh initiated the purchase of cocaine by asking Wallen if she wanted to sell some, a police officer is permitted to provide an opportunity for an individual to commit an offense. Based on the testimony, the jury could have reasonably concluded that, unlike the sale of marijuana, the motivation to sell the cocaine originated with Wallen and that Pugh had merely provided her with an opportunity to sell it. Thus, the jury could have reasonably found that, even though Wallen was entrapped with regard to the trafficking of marijuana, she was not entrapped when she sold cocaine to Pugh.
 {¶ 22} Assuming arguendo that an inconsistency does exist, Wallen's conviction for trafficking in cocaine is not inconsistent with the acquittals for trafficking in marijuana. In Lovejoy, the Supreme Court of Ohio reiterated that "an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." 79 Ohio St.3d at 446; Statev. Brown (1984), 12 Ohio St.3d 147, 465 N.E.2d 889 (holding that the jury's finding that the defendant was insane as to two charges but sane as to the others did not require reversal of the convictions.); State v.Adams (1978), 53 Ohio St.2d 223. Here, the differing verdicts relate to different counts in the indictment and do not arise out of inconsistent responses to the same count. Accordingly, the verdicts are not inconsistent and the jury's findings do not warrant reversal.
 {¶ 23} The second assignment of error is overruled.
 {¶ 24} The judgment of the trial court will be affirmed.
Brogan, P.J. and Fain, J., concur.